UNITED STATES BANKRUPTCY COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re : | |
| : | Case No.: 20-11285-mdc |
| Museum of American Jewish History, d/b/a : | Chapter 11 |
| National Museum of American Jewish History : | |
| : | |
| Debtor. : | |

**MOTION IN LIMINE OF UMB BANK, AS INDENTURE TRUSTEE,
AND BNB BANK TO PRECLUDE EXPERT TESTIMONY AND/OR
REPORTS AT THE VALUATION HEARING**

UMB Bank, National Association, as successor Trustee under the June 30, 2015 Trust Indenture between Philadelphia Authority for Industrial Development and TD Bank, N.A., as original Trustee (hereafter the "Indenture Trustee" or "UMB"), the mortgagee and secured creditor of the above-captioned debtor (the "Debtor"), and BNB Bank, by their undersigned counsel, hereby file this Motion in Limine to preclude the Debtor from using certain expert testimony and/reports at the valuation hearing scheduled in this matter, and in support thereof states as follows:

I. **BACKGROUND TO THE MOTION**

The single most important fact relevant to determining the value of the property at issue in this case is not disputed: under its Third Amended Plan of Reorganization, Debtor intends to continue to operate the Property as a museum if its plan is confirmed. Based on the plain language of section 506(a) of the Bankruptcy Code, Supreme Court precedent *and* case law in the courts of the Third Circuit, it is absolutely clear that where a debtor's plan of reorganization is premised on its continued retention of the asset to be valued, such a valuation *must* be based on the debtor's *actual* intended use of the property when it emerges from bankruptcy and *not* on

some other use not intended by the Debtor.

Notwithstanding this well-settled law, the Debtor does not intend to present any evidence at the upcoming valuation hearing as to the value of the subject property *based on its intended continued use a museum*. Rather, all of the evidence of the property's value that the Debtor intends to adduce at the hearing is based *solely* on the property's adaptive re-use an office building. In this regard, the expert opinion of Reaves Lukens III on which Debtor intends to rely (the "Lukens Appraisal")[1] is based *solely* on his opinion of the property's purported "highest and best use," which Mr. Lukens opines is an the adaptive re-use to something other than a museum. Thus, the *entire premise* of the Lukens Appraisal – and everything that flows from it – is fatally flawed and of no value to the Court.

In fairness to Mr. Lukens, he initially appraised the property approximately six (6) months before the Debtor filed for bankruptcy protection, and the applicable case law discussed herein for asset valuation is solely applicable in a bankruptcy cramdown context. Nevertheless, once the bankruptcy was filed, the Debtor should have been aware that, in light of 11 U.S.C. § 506(a) and its mandate that property must be valued based on the debtor's actual intended use of the property, the Lukens Appraisal became irrelevant. Debtor, in fact, had an opportunity to apply the correct standard when it directed Mr. Lukens to submit an updated appraisal. Mr. Lukens's two-page updated appraisal, however, like his initial appraisal, completely ignores the Debtor's actual intended use of the property and continues to value the property as an office building.

Moreover, as discussed further below, this is not a situation where the issues raised herein go to the *weight* to be accorded to the Lukens Appraisal. Rather, because his opinion is not tied

---

[1] The Lukens Appraisal consists of that certain Appraisal Report dated as of September 24, 2019 as updated by letter dated August 24, 2020, copies of which are attached hereto as *Exhibits A* and *B*, respectively.

2

to the facts of the case, and does not take into account the applicable law, it is not reliable, is of *no use* to the Court in resolving the issue of the property's value, and should be excluded. By contrast, the expert report and anticipated testimony of Eric Enloe, one of the experts for the Indenture Trustee and BNB Bank, properly values the property pursuant to the Debtor's intention to continue operating the property as a museum.

**II.    STATEMENT OF FACTS**

   **A. The Real Property and Debtors' Intended Use Upon Plan Confirmation**

   1. The real property at issue is located at 101 S. Independence Mall East, Philadelphia, Pennsylvania. The real property is and always has been 100% owned and occupied by the Debtor and operated as the National Museum of American Jewish History (the "Museum"). The Debtor was formed exclusively for the purpose of owning and operating a museum, obtained financing exclusively for that purpose, and that is how the property has always been operated since Debtor acquired it.

   2. Pursuant to the Debtor's Third Amended Plan of Reorganization, the Debtor intends to continue using the property as a museum if it is able to get a plan confirmed. There is no dispute about this fact.

   **B. The Lukens Appraisal**

   3. The Debtor intends to rely upon the Lukens Appraisal. The Lukens Appraisal specifically, directly and categorically ignores the Debtor's actual intent to continue to own and operate using the property as a museum – the very cornerstone of its Plan of Reorganization. Rather, Mr. Lukens appraised the property based on his opinion of the property's highest and best use as adaptive re-use to an office building. Thus, the Lukens Appraisal states:

   - "The opinion of value for the subject as is reflects as an *adaptive reuse office.*" *Id.* at 1 (emphasis added);

3

- "Given the locational characteristics of the site, continued use as a museum would not be considered the highest and best use of the property which will be discussed in a subsequent section. .... *The subject building exceeds the height requirement making adaptive reuse of the structure the most feasible use of the building should it no longer be a museum.*" *Id.* at 3 (emphasis added);

- "We valued the property based on a highest and best use conclusion." *Id.* at 4;

- "The highest and best use of the subject property, as improved, *is adaptive reuse as an office* use." *Id.* at 32 (emphasis added);

- "The maximally productive use of the subject property is adaptive reuse as an office." *Id.* at 33; and

- In the two-page "update" of his September 24, 2019 appraisal, Mr. Lukens again focused solely on adaptive reuse: "*adaptive reuse of the subject* does provide some advantages for an owner user, which may wish to control their own building." *See* Exhibit B attached hereto.

4. Based on his threshold determination to value the property as an office building, Mr. Lukens used the sales comparison and income approaches to valuation, and relied *exclusively* on sales transactions involving adaptive conversions to office buildings or mixed – use properties, and rental income of offices buildings and mixed-use properties, respectively. (*See, e.g.*, Ex. A at 33 ("We have selected comparables in the subject's market area that were also purchased for adaptive reuse purposes.").) The same is true with respect to the one additional comparable sale he referenced in his update dated August 24, 2020.

5. Because the Lukens Appraisal values the property as if it were an office building, it does not use any museums as comparable properties under either its sales comparison or income approaches to valuation.

## III. ARGUMENT

### A. THE STANDARD FOR THE ADMISSIBILITY OF EXPERT OPINIONS

Rule 702 of the Federal Rules of Evidence provides:

4

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

The report and testimony of Mr. Lukens do not constitute admissible evidence pursuant to Federal Rule of Evidence 702. In analyzing the requirements of Rule 702, the Third Circuit Court of Appeals developed a three part analysis to be applied to proffered expert testimony, which can be summarized as "'qualifications,' 'reliability' and 'relevancy' or 'fit.'" *Crisomia v. Parkway Mortgage, Inc. (In re: Crisomia)*, 286 B.R. 604, 607-08 (Bankr. E.D. Pa. 2002) citing *In re: Paoli R.R. Yard, PCB Litigation*, 35 F.3d 717, 741-43 (3d Cir. 1994).

This motion to exclude the Lukens Appraisal and any related testimony is specifically directed to the relevancy, or fit, standard. The Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 469 (1993) first established the relevancy, or fit, standard applicable to expert testimony. Recognizing that expert testimony is especially dangerous to the fact-finding process because it can be both "powerful and quite misleading," the Supreme Court held that expert opinion is only permitted when it is tied to the facts of a particular case such that it will aid the factfinder in resolving the factual dispute. *Daubert*, 509 U.S. at 591, 595.

As demonstrated herein, the Lukens Appraisal is *entirely*, but erroneously, based on his opinion that the property should be valued as if it were an office building, and completely ignores the *actual intended use of the property* by the Debtor as a museum should it be able to confirm its Plan of Reorganization. While a valuation of property based on something other the

Debtor's intended use may be appropriate in some contexts, it is a patently improper standard when valuing property pursuant to 11 U.S.C. § 506(a) in a bankruptcy cramdown context. Accordingly, Mr. Lukens's opinion as to value, as set forth in the Lukens Appraisal, does not satisfy the relevance (or "fit") standard of Fed. R. Evid. 702.

### B. THE LUKENS APPRAISAL IS FATALLY FLAWED BECAUSE IT FAILS TO VALUE THE PROPERTY BASED ON THE DEBTOR'S INTENDED USE

Section 506(a) of the Bankruptcy Code provides that the value of a creditor's collateral "shall be determined in light of the purpose of the evaluation *and the proposed distribution or use of such property.*" 11 U.S.C. § 506(a) (emphasis added). Where, as here, the statutory language is clear and unambiguous, a court's function is to enforce it according to its terms. *United States v. Ron Pair Enters.*, 489 U.S. 235-241-42 (1989). Additionally, courts are to construe a statute, if possible, so that "no clause, sentence or word" is rendered "superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). In this case, even though the above language is clear and unambiguous, the Debtor nevertheless demands that the Court to ignore these basic tenets of statutory construction and accept a valuation of its property that is *not* based on its "proposed use" of the property – retention of the property and continued operation of the property as a museum – but rather, as converted to an office building.

In the seminal case of *Associates Commercial Corporation v. Rash*, 520 U.S. 953 (1997), the Supreme Court considered the proper valuation standard when a debtor invoking the cramdown power retains and uses the property. The Court concluded that that not only does the plain language of 11 U.S.C. § 506(a) require that the valuation of property be based on the debtor's *actual* proposed use of the property, but that *"[t]he proposed disposition or use of the collateral is of paramount importance to the valuation question."* Id. at 962 (emphasis added). Notably, under the statute, it makes no difference whether the value of the property based on the

6

actual and intended use is higher or lower than the value under some alternate use.[2] Based on the Supreme Court's mandate that property being valued pursuant to 11 U.S.C. § 506(a) must be valued pursuant to the debtor's actual intended use, courts have rejected valuations like the one contained in the Lukens Appraisal that are not based on the debtor's *actual* intended use. *See e.g.*, *Matter of Houston Regional Sports Network, L.P.*, 886 F.3d 523, 533 (5th Cir. 2018) ("The Supreme Court's decision in *Rash* confirms that bankruptcy court valuation must be based on actual use"); *In re Heritage Highgate, Inc.*, 679 F.3d 132 (3d Cir. 2012) ("the 'proposed disposition or use' of the collateral is of paramount importance to the valuation question."); *In re Donato*, 253 B.R. 151, 154-155 (Bkrtcy. M.D. Pa. 2000) (rejecting valuation of property based on highest and best use in light of mandate to value property based on the debtor's intended use of the property); *In re McElwee*, 449 B.R. 669, 672-673 (Bkrtcy. M.D. Pa. 2011) ("It bears repeating that the proposed disposition or use of the collateral is pivotal in determining the correct approach to valuation."); *In re Donato*, 253 B.R. 151, 154-155 (Bkrtcy. M.D. Pa. 2000) (rejecting valuation of property based on highest and best use in light of mandate to value property based on the debtor's intended use of the property); *In re Casey*, No. 5-12-BK-04618, at *2 (Bkrtcy. M.D. Pa. July 22, 2013) (holding that the value of real property should be based on the debtor's intended use of the property); *In re Brace*, 163 B.R. 274 (Bkrtcy. W.D. Pa. 1994) (rejecting appraisal best on highest and best of real property and holding that "the Debtor's current and prospective use is the correct basis for the appraisal in determining the amount of the lender's secured claim.").

Particularly instructive is *In re Donato*, 253 B.R. 151, 154-155 (Bkrtcy. M.D. Pa. 2000). In that case, the court reiterated that when a debtor exercises the cramdown option and retains

---

[2] Although *Rash* was a chapter 13 case, it is well-settled that it applies in chapter 11 cases as well. *See In re Heritage Highgate, Inc.*, 679 F.3d 132, 141 (3d Cir. 2012) ("Courts have recognized that similar reasoning applies with equal force in the Chapter 11 reorganization context.").

the property that secures a creditor's claim, *Rash* requires that the property be valued at its "replacement value." *Id.* at 151. The court then enunciated the Supreme Court's definition of replacement value as:

> "the price a willing buyer *in the debtor's trade, business, or situation* would pay a willing seller to obtain property of like age and condition." The [*Rash*] Court further noted that replacement value is the cost a debtor would incur to obtain a like asset for the *same proposed use*. Once again, the Court is emphasizing the importance of the proposed use of the collateral.

*Id.* at 155 (first emphasis added; second emphasis in original) (internal citation omitted). Thus, the court in *Donato* expressly rejected pre-*Rash* cases from other jurisdictions that held that real property should be valued at its highest and best use regardless of the debtor's proposed use:

> Hence, the proposed use of the collateral is of paramount importance according to the Supreme Court and section 506(a). In light of the *Rash* opinion, we find that to automatically apply the 'highest and best' use value to the real estate, without examining its proposed intended use, is not proper, and reject the cases cited by appellant which so hold.

*Id.* at 155.

### C. THE FLAWS WITH THE LUKENS APPRAISAL DO NOT GO SIMPLY TO WEIGHT BUT TO THE ENTIRE APPRAISAL

As demonstrated above, the Debtor intends to retain the property at issue and continue to operate it as a museum. That fact is not in dispute. Nevertheless, the Lukens Appraisal explicitly ignores the Debtor's "proposed disposition or use" of the collateral as a museum and, instead, values the property as an office building. Mr. Lukens' fatal error in properly identifying how the property is to be valued renders everything that follows in his appraisal irrelevant and of no use whatsoever to the Court. Because the Lukens Appraisal values the property as an adaptive re-use to an office building and not as a museum, it relies exclusively on sales and rental comparisons of properties converted into office buildings and mixed-use properties, not

8

museums. In light of the Debtor's intended use of the property as a museum, the comparisons in the Lukens Appraisal are entirely irrelevant as well as the appraisal itself. Accordingly, *this is not a situation where the flaws in the appraisal merely go to its weight*. Rather, those flaws render the Lukens Appraisal inadmissible altogether pursuant to Fed. R. Evid. 702 because it fails to satisfy the relevance, or fit, requirement.

For all of the foregoing reasons, UMB Bank and BNB Bank respectfully request that the Court grant their motion *in limine* to exclude the Lukens Appraisal and related testimony.

## NOTICE

The Indenture Trustee and BNB Bank have provided notice of this Motion to: (a) the Debtor; (b) the United States Trustee for the Eastern District of Pennsylvania; (c) the 20 Largest unsecured creditors of the Debtor on the list filed under Bankruptcy Rule 1007(d); (d) counsel to the holders of Series 2015B Bonds; and (e) all parties who have requested notice in this Chapter 11 Case pursuant to Bankruptcy Rule 2002. In light of the nature of relief requested in this Motion, the Indenture Trustee and BNB Bank respectfully submit that no further notice is necessary.

## NO PRIOR REQUEST

No prior motion for the relief requested herein has been made to this or any other Court.

WHEREFORE, the Indenture Trustee and BNB Bank respectfully request that the Court enter an Order, substantially in the form attached hereto as *Exhibit C*, excluding the Lukens Appraisal and the related testimony of Reaves Lukens III, and for such other relief as this Court deems just and necessary.

Dated: September 16, 2020

**WEBER GALLAGHER SIMPSON STAPLETON FIRES & NEWBY, LLP**

/s/ Peter E. Meltzer

Peter E. Meltzer, Esquire
2000 Market Street, 13th Floor
Philadelphia, PA 19103
267-295-3363
pmeltzer@wglaw.com

*Attorneys for UMB Bank, as Indenture Trustee*

**MORITT HOCK & HAMROFF LLP**

/s/ Theresa A. Driscoll

Theresa A. Driscoll
Alexander D. Widell
400 Garden City Plaza
Garden City, New York 11530
(516) 873-2000
tdriscoll@moritthock.com
awidell@moritthock.com

*Attorneys for BNB Bank*

2343018v5