# UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | : Chapter 11 |
| | : |
| Museum of American Jewish History, d/b/a | : Case No. 20-11285 |
| National Museum of American Jewish History | : |
| | : |
| Debtor. | : |

## DEBTOR'S FOURTH AMENDED CHAPTER 11 PLAN

The above-captioned debtor and debtor-in-possession hereby submits this Fourth Amended Chapter 11 Plan of Reorganization.

**DILWORTH PAXSON LLP**
Lawrence G. McMichael
Peter C. Hughes
Yonit A. Caplow
1500 Market St., Suite 3500E
Philadelphia, PA 19102
Telephone:  (215) 575-7000
Facsimile:  (215) 575-7200

*Counsel for the Debtor and
Debtor-in-Possession*

Dated:  September 24, 2020

TABLE OF CONTENTS

Page No.

UNITED STATES BANKRUPTCY COURT FOR THE EASTERN district of
PENNSYLVANIA ...................................................................................1

DEBTOR'S Fourth Amended CHAPTER 11 PLAN ....................................1

INTRODUCTION         1

ARTICLE I.               DEFINITIONS, INTERPRETATION, AND EXHIBITS. ....................1
     Section 1.01.        Definitions. .................................................................................1
     Section 1.02.        Rules of Interpretation. ...............................................................11
     Section 1.03.        Exhibits. .....................................................................................12

ARTICLE II.              CLASSIFICATION OF CLAIMS AND INTERESTS .......................12
     Section 2.01.        Generally. ....................................................................................12
     Section 2.02.        Unclassified Claims. ...................................................................12
     Section 2.03.        Unimpaired Classes. ...................................................................12
     Section 2.04.        Impaired Classes Entitled to Vote .............................................13

ARTICLE III.             PROVISIONS FOR TREATMENT OF CLASSES OF
                         CLAIMS AND INTERESTS .........................................................13
     Section 3.01.        Satisfaction of Claims and Interests. ..........................................13
     Section 3.02.        Unclassified Claims, Classified Unimpaired and Impaired
                          Claims  and Classified Interests. ..............................................13
     Section 3.03.        Administrative Claims. ................................................................14
     Section 3.04.        Priority Tax Claims. ....................................................................14
     Section 3.05.        Class 1:  Priority Claims. ............................................................14
     Section 3.06.        Class 2: Member Claims. ............................................................15
     Section 3.07.        Classes 3A and 3B:  Claim of the Holders of Series 2015A and
                          Series 2015B Bonds. ..................................................................15
     Class 4:  Other Secured Claims. .........................................................................17
     Section 3.08.        Class 5:  General Unsecured Claims. ..........................................17
     Section 3.09.        Class 6:  Interests. ......................................................................17

ARTICLE IV.              ACCEPTANCE OR REJECTION OF THE PLAN;
                         CRAMDOWN ...........................................................................18
     Section 4.01.        Acceptance by Impaired Classes of Claims and Interests. ........18
     Section 4.02.        Voting Classes. ...........................................................................18
     Section 4.03.        Bondholder Ballot Instructions. ..................................................18
     Section 4.04.        General Unsecured Claims Ballot Instructions. ..........................18
     Section 4.05.        Cramdown. ..................................................................................19

ARTICLE V.               PROVISIONS GOVERNING DISTRIBUTIONS UNDER
                         THE PLAN .................................................................................19
     Section 5.01.        Timing of Distributions. ..............................................................19

Section 5.02.     Distributions to Holders of Allowed Claims. .....................................19
Section 5.03.     Delivery of Distributions. .................................................................20
Section 5.04.     Method of Cash Distributions. ...........................................................20
Section 5.05.     Failure to Negotiate Checks. .............................................................20
Section 5.06.     Unclaimed Distributions. ..................................................................20
Section 5.07.     Limitation on Distribution Rights. .....................................................21
Section 5.08.     Compliance With Tax Requirements. ..................................................21
Section 5.09.     Claims As To Which Insurance May Apply. ........................................21

ARTICLE VI.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES;
                 INDEMNIFICATION OBLIGATIONS; BENEFIT
                 PROGRAMS. ................................................................................21
Section 6.01.     Rejection of Executory Contracts and Unexpired Leases. ....................21
Section 6.02.     Schedule of Assumed Executory Contracts and Unexpired
                 Leases. .........................................................................................22
Section 6.03.     Assumption Procedures and Resolution of Treatment
                 Objections. ...................................................................................23
Section 6.04.     Rejection Claims. ...........................................................................24
Section 6.05.     Assignment. ...................................................................................24
Section 6.06.     Approval of Assumption, Rejection, Retention or Assignment
                 of Executory Contracts and Unexpired Leases. ..................................24
Section 6.07.     Modifications, Amendments, Supplements, Restatements or
                 Other Agreements. .........................................................................25

ARTICLE VII.     MEANS FOR IMPLEMENTATION OF THE PLAN. .......................25
Section 7.01.     Continued Existence. ......................................................................25
Section 7.02.     Plan Funding. ................................................................................26
Section 7.03.     Other Transactions. ........................................................................26
Section 7.04.     Organizational Action. ....................................................................26

ARTICLE VIII.    PRESERVATION OF CAUSES OF ACTION AND RIGHT
                 TO DEFEND AND CONTEST. ......................................................26
Section 8.01.     Preservation of Rights. ....................................................................26
Section 8.02.     Rights of Action. ...........................................................................27
Section 8.03.     Setoffs. .........................................................................................27
Section 8.04.     No Payment or Distribution Pending Allowance. .................................27
Section 8.05.     Resolution of Disputed Claims. .........................................................27

ARTICLE IX.      CONDITIONS to confirmation and the effectiveness OF THE
                 PLAN ..........................................................................................28
Section 9.01.     Conditions to Confirmation. .............................................................28
Section 9.02.     Conditions to Effectiveness. .............................................................28
Section 9.03.     Waiver of Conditions to Confirmation or Effectiveness. ......................28
Section 9.04.     Failure to Satisfy Conditions to Effectiveness. ...................................28

ARTICLE X.       EFFECTS OF CONFIRMATION .................................................29
Section 10.01.    Vesting of Assets. ..........................................................................29

121068257_8

Section 10.02.    Injunction. ............................................................................................29
Section 10.03.    Other Documents and Actions. .............................................................30
Section 10.04.    Term of Injunctions or Stays. ...............................................................30
Section 10.05.    Preservation of Insurance. ....................................................................30
Section 10.06.    Guaranties. ............................................................................................30
Section 10.07.    No Successor Liability. .........................................................................31
Section 10.08.    Agreements with Artifact Lenders .......................................................31

ARTICLE XI.        RETENTION OF JURISDICTION ........................................................31
Section 11.01.    Exclusive Jurisdiction of Bankruptcy Court. .......................................31
Section 11.02.    Failure of Bankruptcy Court to Exercise Jurisdiction .........................33

ARTICLE XII.       MISCELLANEOUS PROVISIONS ......................................................33
Section 12.01.    Binding Effect of Plan. .........................................................................33
Section 12.02.    Final Order. ...........................................................................................33
Section 12.03.    Modification of the Plan. ......................................................................34
Section 12.04.    Business Days. ......................................................................................34
Section 12.05.    Severability. ..........................................................................................34
Section 12.06.    Governing Law. .....................................................................................34
Section 12.07.    Payment of Statutory Fees. ...................................................................34
Section 12.08.    Post-Confirmation Operating Reports. .................................................34
Section 12.09.    Notices. .................................................................................................35
Section 12.10.    Filing of Additional Documents. ..........................................................35
Section 12.11.    Section 1125 of the Bankruptcy Code. .................................................35
Section 12.12.    Section 1146 Exemption. ......................................................................36
Section 12.13.    Time. .....................................................................................................36
Section 12.14.    No Attorneys' Fees. ..............................................................................36
Section 12.15.    Continued Confidentiality Obligations. ................................................36
Section 12.16.    No Waivers. ...........................................................................................36
Section 12.17.    Entire Agreement. .................................................................................36
Section 12.18.    Waiver. ..................................................................................................37
Section 12.19.    Bar Date for Professionals. ...................................................................37

121068257_8

## INTRODUCTION

This Fourth Amended Chapter 11 Plan (as may be amended or modified hereafter in accordance with its terms, the "Plan"), dated as of September 24, 2020 is proposed by debtor Museum of American Jewish History, d/b/a National Museum of American Jewish History (the "Debtor" or the "Museum"). Reference is made to the Disclosure Statement, filed on September 24, 2020, accompanying the Plan for a discussion of the Debtor's history, business, results of operations, historical financial information, properties, projections for future operations and risk factors, a summary and analysis of the Plan, and certain related matters.

SUBJECT TO CERTAIN RESTRICTIONS AND REQUIREMENTS SET FORTH IN SECTION 1127 OF THE BANKRUPTCY CODE, BANKRUPTCY RULE 3019 AND THE PLAN, THE DEBTOR RESERVES THE RIGHT TO ALTER, AMEND, MODIFY, REVOKE OR WITHDRAW THE PLAN PRIOR TO ITS SUBSTANTIAL CONSUMMATION.

Capitalized terms used herein shall have the meanings set forth in Article I hereof. Claims against, and Interests in, the Debtor (other than Administrative Claims and Priority Tax Claims) are classified in Article II hereof and treated in Article III hereof.

## ARTICLE I.
## DEFINITIONS, INTERPRETATION, AND EXHIBITS.

Section 1.01.  Definitions.

Unless the context requires otherwise, the following terms shall have the following meanings whether presented in the Plan or the Disclosure Statement with initial capital letters or otherwise. As used herein:

"Administrative Claim" means a Claim for: (a) any cost or expense of administration (including, without limitation, the Professional Fee Claims) of the Chapter 11 Case asserted or arising under sections 503, 507(a)(1), 507(b) or 1114(e)(2) of the Bankruptcy Code including, but not limited to (i) any actual and necessary post-Petition Date cost or expense of preserving the Debtor's Estate or operating the Debtor, (ii) any post-Petition Date cost, indebtedness or contractual obligation duly and validly incurred or assumed by the Debtor in the ordinary course of its business, (iii) compensation or reimbursement of expenses of Professionals to the extent Allowed by the Bankruptcy Court under sections 330(a) or 331 of the Bankruptcy Code, and (iv) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546 of the Bankruptcy Code; and (b) any fees or charges assessed against the Debtor's Estate under section 1930 of title 28 of the United States Code.

"Affiliate" shall have the meaning set forth in section 101(2) of the Bankruptcy Code.

"Allowed" means, with reference to any Claim, (a) any Claim against the Debtor that has been listed by the Debtor in the Schedules, as such Schedules may have been amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in

amount and not Disputed or contingent, and with respect to which no contrary Proof of Claim has been filed, (b) any Claim specifically allowed under the Plan, (c) any Claim the amount or existence of which has been determined or allowed by a Final Order, or (d) any Claim as to which a Proof of Claim has been timely filed before the Bar Date, provided that at the time of the Effective Date the Debtor has not identified such Claim as being objectionable in part or in whole and no Objection to the allowance thereof has been filed by the Claims Objection Deadline; provided, however, that the term Allowed, with reference to any Claim, shall not include (x) any unliquidated Claim or (y) interest or attorneys' fees on or related to any Claim that accrues from and after the Petition Date unless otherwise expressly provided for in the Plan.

"Allowed Claim" means a Claim that is Allowed.

"Allowed Interest" means an Interest that is Allowed.

"Artifact Lenders" means a party who has lent an artifact to the Debtor.

"Assumption Effective Date" means the date upon which the assumption of an executory contract or unexpired lease under this Plan is deemed effective.

"Assumption Party" means a counterparty to an executory contract or unexpired lease to be assumed and/or assigned by the Debtor.

"Avoidance Actions" means any and all Causes of Action which a trustee, debtor in possession, the Estate or other appropriate party in interest may assert under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, or 553 of the Bankruptcy Code (other than those which are released or dismissed as part of and pursuant to the Plan) or under other similar or related state or federal statutes or common law, including fraudulent conveyance laws.

"Ballot" means the form of ballot to be provided to Holders of claims in classes which are entitled to vote on the Plan, upon which such Holder shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting.  The Ballots provided to Bondholders shall be formatted with respect to the Bonds and Bondholders.

"Bankruptcy Code" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101 et seq., as in effect on the Petition Date, together with all amendments and modifications thereto that subsequently may be made applicable to the Chapter 11 Case.

"Bankruptcy Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania or, if such Court ceases to exercise jurisdiction over these proceedings, the court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case.

"Bankruptcy Rules" means: (a) the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended and promulgated under section 2075 of title 28 of the United States Code; (b) the Federal Rules of Civil Procedure, as amended and promulgated under section 2072 of title 28 of the United States Code; (c) any local rules applicable to the Bankruptcy Court; and (d) any standing orders governing practice and procedure issued by the

Bankruptcy Court, each as in effect on the Petition Date, together with all amendments and modifications thereto that were subsequently made applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"Bar Date" means the applicable bar date by which a Proof of Claim must be, or must have been, filed, as established by an order of the Bankruptcy Court.

"Bonds" means those Philadelphia Authority for Industrial Development Revenue Bonds, Series 2015A and Series 2015B (National Museum of American Jewish History Project) in the original aggregate principal amount of $30,750,000.  The Bonds were issued at the request of the Debtor, by the Philadelphia Authority for Industrial Development, pursuant to the Indenture.

"Bondholder" means any beneficial holder of the Bonds.  Beneficial holders of the Bonds as of the Voting Record Date are entitled to vote to accept or reject this Plan, and all references in this Plan or the Disclosure Statement to Bondholders voting shall refer to the beneficial holders of the Bonds as of the Voting Record Date.

"Bondholder Ballot" means the form of ballot to be provided to Bondholders, to be formatted with respect to the Bonds and the Bondholders, upon which Bondholders shall, among other things, indicate their acceptance or rejection of the Plan in accordance with the instructions regarding voting by Bondholders.

"Business Day" means any day which is not a Saturday, a Sunday, a "legal holiday" as defined in Bankruptcy Rule 9006(a), or a day on which banking institutions in the State of Pennsylvania are authorized or obligated by law, executive order or governmental decree to be closed.

"Cash" means money, currency and coins, negotiable checks, balances in bank accounts and other lawful currency of the United States of America and its equivalents.

"Causes of Action" means any and all actions, Claims, rights, defenses, third-party claims, damages, executions, demands, crossclaims, counterclaims, suits, choses in action, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment and claims whatsoever, whether known, unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, Disputed, undisputed, secured or unsecured and whether asserted or assertable directly, indirectly or derivatively, at law, in equity or otherwise, accruing to the Debtor, including, but not limited to, the Avoidance Actions.

"Chapter 11 Case" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date.

"Claim" shall have the meaning set forth in section 101(5) of the Bankruptcy Code.

"Claims Objection Deadline" means the latest of:  (a) 120 days after the Effective Date; (b) 75 days after the date on which any Claim is filed; or (c) such other date as may be

fixed by the Bankruptcy Court, whether fixed before or after the date specified in clauses (a) and (b) above.

"Claim of the Bonds" shall mean the claim held on account of the Bonds and under the Indenture, against the Debtor and its estate, as of the Petition Date including, the outstanding principal amount of Bonds, plus accrued and unpaid interest as of the Petition Date plus all other amounts due with regard to the Bonds or otherwise due under the Indenture and other documents related to the issuance of the Bonds, including without limitation the fees and expenses of the Indenture Trustee, including the fees and expenses of the Indenture Trustee's attorneys, consultants and advisors.  Although the Indenture Trustee asserts that it holds the Claim of the Bonds, Bondholders hold the right to vote with respect to the Claim of the Bonds whether to accept or to reject this Plan.

"Class" means each class, subclass or category of Claims or Interests as classified in Article II of the Plan.

"Class 3B Payment Fund" means cash in the amount of $100,000.

"Class 5 Payment Fund" means cash in the amount of $250,000.

"Confirmation" means the entry by the Bankruptcy Court of the Confirmation Order.

"Confirmation Date" means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on the docket of the Bankruptcy Court with respect to the Chapter 11 Case within the meaning of Bankruptcy Rules 5003 and 9021.

"Confirmation Hearing" means the hearing held before the Bankruptcy Court to consider confirmation of the Plan pursuant to sections 1128 and 1129 of the Bankruptcy Code.

"Confirmation Order" means the order entered by the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

"Creditor" means any Person that is the Holder of any Claim against any the Debtor.

"Customer Program" means the Debtor's customer programs and practices as to which the Debtor has requested authorization to honor pre-petition obligations and to otherwise continue in the ordinary course of business by the Order Pursuant to Sections 105(a), 363(b), 363(c), 365(a), 1107(a) and 1108 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure Authorizing the Debtor to Maintain and Administer Customer Programs and Honor Prepetition Obligations Related Thereto.

"Cure" means a distribution made in the ordinary course of business following the Effective Date pursuant to an executory contract or unexpired lease assumed under section 365 or 1123 of the Bankruptcy Code (i) in an amount equal to the Proposed Cure (including if such Proposed Cure is zero dollars) or (ii) if a Treatment Objection is filed with respect to the applicable Proposed Cure, then in an amount equal to the unpaid monetary obligations owing by

the Debtor and required to be paid pursuant to section 365(b) of the Bankruptcy Code, as may be (x) determined by Final Order or (y) otherwise agreed upon by the parties.

"Day(s)" means, unless expressly otherwise provided, calendar day(s).

"Debtor" and "Museum" mean Museum of American Jewish History, d/b/a National Museum of American Jewish History, debtor and debtor-in-possession in this Chapter 11 Case.

"Disallowed" means, with respect to any Claim or Interest or portion thereof, any Claim against or Interest in the Debtor which: (a) has been withdrawn, in whole or in part, by agreement of the Debtor and the Holder thereof; (b) has been withdrawn, in whole or in part, by the Holder thereof; or (c) has been disallowed, in whole or part, by Final Order of a court of competent jurisdiction.  In each case a Disallowed Claim or a Disallowed Interest is disallowed only to the extent of disallowance or withdrawal.

"Disclosure Statement" means the Debtor's Disclosure Statement with Respect to the Chapter 11 Plan filed on the date hereof, including all exhibits, appendices, schedules and annexes, if any, attached thereto, as submitted by the Debtor, as the same may be altered, amended, supplemented or modified from time to time, and which was prepared and distributed in accordance with sections 1125 and 1126(b) of the Bankruptcy Code and Bankruptcy Rule 3018.

"Disputed" means any Claim or Interest that has been neither Allowed nor Disallowed.

"Disputed Claim" means a Claim, or any portion thereof, that is Disputed.  For purposes of the Plan, a Claim that has been neither Allowed nor Disallowed shall be considered a Disputed Claim.

"Effective Date" means the first Business Day following the date on which all conditions to consummation set forth in Article IX of the Plan have been satisfied or waived (if capable of being duly and expressly waived), provided that no stay of the Confirmation Order is then in effect.

"Entity" means any individual, corporation, limited or general partnership, joint venture, association, joint stock company, limited liability company, estate, trustee, United States Trustee, unincorporated organization, government, governmental unit (as defined in the Bankruptcy Code), agency or political subdivision thereof.

"Estate" means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code upon commencement of the Chapter 11 Case.

"Exculpated Persons" means to the maximum extent permitted by the Bankruptcy Code and applicable law, the Debtor, its officers, directors, trustees, employees, advisors, members of its National Leadership Council, attorneys or agents acting in such capacity on or after the Petition Date.

"Federal Governmental Unit" means the United States and/or any department, agency or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under title 11 of the United States Code).

"Final Decree" means the final decree entered by the Bankruptcy Court after the Effective Date and pursuant to section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

"Final Order" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court, the operation or effect of which has not been stayed, reversed, vacated, modified or amended, and as to which order or judgment (or any revision, modification, or amendment thereof) of the time to appeal, petition for certiorari, or seek review or rehearing has expired and as to which no appeal, petition for certiorari, or petition for review or rehearing was filed or, if filed, remains pending; provided, however, that the possibility that a motion may be filed pursuant to Rules 9023 or 9024 of the Bankruptcy Rules or Rules 59 or 60(b) of the Federal Rules of Civil Procedure shall not mean that an order or judgment is not a Final Order.

"General Unsecured Claims" means all Claims, including Rejection Claims, that are not Administrative Claims, Priority Tax Claims, Priority Claims, Class 1 Claims, Class 2 Claims, Class 3A or 3B Claims, Class 4 Claims, or Class 6 Interests. General Unsecured Claims shall include a deficiency claim relating to the Class 3A Claim of the Bonds in the event the Holder of the Class 3A Claim does not make an election for Treatment under 11 U.S.C. §1111(b)(2), but shall not include any deficiency claim relating to Class 3B Claims.

"Holder" means an Entity holding a beneficial interest in a Claim or Interest and, when used in conjunction with a Class or type of Claim or Interest, means a holder of a beneficial interest in a Claim or Interest in such Class or of such type.

"Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"Impaired Claim" means a Claim which is Impaired.

"Indenture" means that Trust Indenture dated as of June 30, 2015, under which the Philadelphia Authority for Industrial Development issued the Bonds.

"Indenture Trustee" means UMB Bank, N.A., as successor to TD Bank, N.A., solely in its capacity as trustee under the Indenture and with respect to the Bonds, or such other successor as may be duly appointed under the Indenture. Notwithstanding anything else herein, this Plan applies and shall apply to the Indenture Trustee solely in its capacity as Indenture Trustee, unless explicitly stated otherwise.

"Insider" shall have the meaning set forth in section 101(31) of the Bankruptcy Code.

"Insurance Plans" means the Debtor's insurance policies and any agreements, documents or instruments relating thereto entered into prior to the Petition Date.

"Interests" means interests in the Debtor.

"Liens" means, with respect to any asset or Property (or the rents, revenues, income, profits or proceeds therefrom), and in each case, whether the same is consensual or nonconsensual or arises by contract, operation of law, legal process or otherwise: (a) any and all mortgages, liens, pledges, attachments, charges, leases evidencing a capitalizable lease obligation, conditional sale or other title retention agreement, or other security interest or encumbrance or other legally cognizable security devices of any kind in respect of any asset or Property, or upon the rents, revenues, income, profits or proceeds therefrom; or (b) any arrangement, express or implied, under which any Property is transferred, sequestered or otherwise identified for the purpose of subjecting or making available the same for the payment of debt or performance of any other obligation in priority to the payment of General Unsecured Creditors.

"Members" means those Persons holding valid memberships to the Museum which (a) had been purchased prior to the Petition Date and (b) had not expired by their terms as of the Effective Date.

"Museum" and "Debtor" mean Museum of American Jewish History, d/b/a National Museum of American Jewish History, debtor and debtor-in-possession in this Chapter 11 Case.

"Notice of Intent to Assume or Reject" means a notice delivered by the Debtor pursuant to Article VI of the Plan stating an intent to assume or reject an executory contract or unexpired lease and including a proposed Assumption Effective Date or Rejection Effective Date, as applicable, and, if applicable, a Proposed Cure and/or a proposed amendment.

"Objection" means any objection, application, motion, complaint or any other legal proceeding seeking, in whole or in part, to Disallow, determine, liquidate, classify, reclassify or establish the priority, expunge, subordinate or estimate any Claim (including the resolution of any request for payment of any Administrative Claim) or Interest other than a Claim or an Interest that is Allowed.

"Other Secured Claim" means any Secured Claim other than (a) a Class 3A Claim or (b) a Class 3B Claim.

"Person" means and includes a natural person, individual, partnership, corporation (as defined in section 101(a) of the Bankruptcy Code), or organization including, without limitation, corporations, limited partnerships, limited liability companies, general partnerships, joint ventures, joint stock companies, trusts, land trusts, business trusts, unincorporated organizations or associations, or other organizations, irrespective of whether they are legal entities, governmental bodies (or any agency, instrumentality or political subdivision thereof), or any other form of legal entities; provided, however, "Person" does not include governmental units, except a governmental unit that (a) acquires an asset from a Person (i) as a result of the operation of a loan guarantee agreement or (ii) as receiver or liquidating agent of a Person; (b) is a guarantor of a pension benefit payable by or on behalf of a Debtor or an Affiliate of a Debtor of; or (c) is the legal or beneficial owner of an asset of (i) an employee pension benefit plan that

-7-

is a governmental plan, as defined in section 414(d) of the Internal Revenue Code of 1986 or (ii) an eligible deferred compensation plan, as defined in section 457(b) of the Internal Revenue Code of 1986, shall be considered for purposes of section 1102 of the Bankruptcy Code to be a Person with respect to such asset or such benefit.

"Petition Date" means March 1, 2020.

"Plan" means this Chapter 11 Plan of Reorganization including all exhibits, appendices, schedules and annexes, if any, attached hereto, as submitted by the Debtor, as such Plan may be altered, amended, supplemented or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Confirmation Order and the terms and conditions of the Plan.

"Plan Documents" means, collectively, the Disclosure Statement, the Plan, the Confirmation Order, and any exhibit to such documents.

"Priority Claims" means any Claim against the Debtor entitled to priority pursuant to section 507(a) of the Bankruptcy Code, other than a Priority Tax Claim or an Administrative Claim.

"Priority Tax Claim" means any and all Claims accorded priority in payment pursuant to section 507(a)(8) of the Bankruptcy Code.

"Professional Fee Claim" means an Allowed Claim for compensation and/or reimbursement of expenses pursuant to sections 327, 328, 330, 331 or 503(b) of the Bankruptcy Code relating to services incurred on and after the Petition Date and prior to and including the Effective Date in connection with an application by the Professionals in the Chapter 11 Case made to and approved by the Bankruptcy Court.

"Professionals" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or any professional entitled to compensation pursuant to sections 327, 328, 330, 331, 503(b)(2) or (4), or 1103 of the Bankruptcy Code, exclusive of any ordinary course professionals retained in this Chapter 11 Case.

"Proof of Claim" means a proof of claim filed against the Debtor in the Chapter 11 Case.

"Property" means all assets or property of the Debtor's Estate of any nature whatsoever, real or personal, tangible or intangible, including contract rights, accounts and Causes of Action, previously or now owned by the Debtor, or acquired by the Debtor's Estate, as defined in section 541 of the Bankruptcy Code.

"Proposed Cure" means, with respect to a particular executory contract or unexpired lease, the consideration that the Debtor proposes (which may be zero or some amount greater than zero) (i) on the notices sent to Assumption Parties listed on Schedule 6.02(a) or (ii) on a Notice of Intent to Assume or Reject, in each case as full satisfaction of the Debtor's obligations with respect to such executory contract or unexpired lease pursuant to section 365(b)

of the Bankruptcy Code.

"Reinstated or Reinstatement" means:  (a) leaving unaltered the legal, equitable, and contractual rights to which a Claim entitles the Holder of such Claim so as to leave such Claim Unimpaired in accordance with section 1124 of the Bankruptcy Code; or (b) notwithstanding any contractual provision or applicable law that entitles the Holder of such Claim to demand or receive accelerated payment of such Claim after the occurrence of a default (i) curing any such default that occurred before or after the Petition Date, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code; (ii) reinstating the maturity of such Claim as such maturity existed before such default; (iii) compensating the Holder of such Claim for any damages incurred as a result of any reasonable reliance by such Holder on such contractual provision or such applicable law; and (iv) not otherwise altering the legal, equitable, or contractual rights to which such Claim entitled the Holder of such Claim; provided, however, that any contractual right that does not pertain to the payment when due of principal and interest on the obligation on which such Claim is based, including, but not limited to, financial covenant ratios, negative pledge covenants, covenants or restrictions on merger or consolidation, and affirmative covenants regarding corporate existence or which prohibit certain transactions or actions contemplated by the Plan, or conditioning such transactions or action on certain factors, shall not be required to be reinstated in order to accomplish Reinstatement.

"Rejection Bar Date" means the earlier of (a) the date set by the Bankruptcy Court for the filing of a Rejection Claim or (b) thirty days from the date on which the relevant executory contract or unexpired lease is effectively rejected by the Debtor.

"Rejection Claims" means Claims of any non-Debtor counterparty to any unexpired lease of nonresidential real property or any executory contract arising on account of the rejection of such lease or contract during the administration of the Chapter 11 Case under section 365 of the Bankruptcy Code or pursuant to the Plan.

"Rejection Effective Date" means (a) the date on which a Final Order is entered with respect to the rejection of an executory contract or unexpired lease during the administration of the Chapter 11 Case under section 365 of the Bankruptcy Code, or (b) the date upon which the rejection of an executory contract or unexpired lease under this Plan is deemed effective, which shall not be later than 60 calendar days after the Effective Date unless otherwise agreed by the relevant Rejection Party.

"Rejection Party" means a counterparty to an executory contract or unexpired lease to be rejected by the Debtor under this Plan or during the administration of the Debtor's Chapter 11 Case.

"Reorganized Debtor" means the Debtor (as defined above) on and after the Effective Date.  Except as otherwise provided in the Plan, the Reorganized Debtor shall continue to exist as a separate legal entity, with all the powers of a non-profit corporation under the laws of the Commonwealth of Pennsylvania and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

"SBA Loan Documents" means the loan agreement, promissory note, security

agreement, and any related documents executed by the Debtor in connection with its borrowing in or about June, 2020 under the SBA Economic Injury Disaster Loan program.

"SBA Claim" means the Claim of the United States Small Business Administration in the original principal amount of $150,000 arising from the Debtor's postpetition borrowing under the SBA Economic Injury Disaster Loan program, pursuant to a loan agreement dated June 13, 2020.

"Schedules" means the schedules of assets and liabilities and statements of financial affairs filed by the Debtor in the Chapter 11 Case, as required by section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

"Secured Claim" means any Claim arising before the Petition Date that is: (a) secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected and enforceable under applicable law on Property in which the Debtor's Estate has an interest and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, excluding Artifact Lenders; or (b) subject to setoff under section 553 of the Bankruptcy Code, but, with respect to both case (a) and (b), only to the extent of the value of the assets or Property securing any such Claim or the amount subject to setoff, as the case may be. The SBA Claim arose postpetition and therefore does not fall within this definition of a Secured Claim, even though the claim is secured by a second-priority lien on certain personal property.

"Tax" means any tax, charge, fee, levy, impost or other assessment by any federal, state, local or foreign governmental authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, ad valorem, estimated, severance, stamp, occupation and withholding tax, together with any interest, penalties, fines or additions attributable to, imposed on, or collected by any such federal, state, local or foreign governmental authority.

"Transferred Avoidance Actions" means all Avoidance Actions of the Debtor other than Avoidance Actions against any of the Releases.

"Treatment Objection" means an objection to the Debtor's proposed assumption or rejection of an executory contract or unexpired lease pursuant to the provisions of this Plan (including an objection to the proposed Assumption Effective Date or Rejection Effective Date, the Proposed Cure and/or any proposed assignment, but not including an objection to any Rejection Claim) that is properly filed with the Bankruptcy Court and served in accordance with the Case Management Order by the Applicable Treatment Objection Deadline.

"Treatment Objection Deadline" means the deadline for filing and serving a Treatment Objection, which deadline shall be 4:00 p.m. (prevailing Eastern Time) on, (i) with respect to an executory contract or unexpired lease listed on Schedule 6.02(a) or 6.02(b), the 15th calendar day after the relevant Schedule is filed and notice thereof is mailed, (ii) with respect to an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 6.02(a) or 6.02(b), the 15th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (iii) with respect to an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 15th

calendar day after such notice is filed and notice thereof is mailed and (iv) with respect to any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to Sections 6.01, 6.03 or 6.04 of the Plan (without being listed on Schedule 6.02(a) or 6.02(b)), the deadline for objections to confirmation of the Plan established pursuant to the Approval Order or other order of the Bankruptcy Court.

"Unclaimed Property" means any distribution (a) of Cash or any other Property made to the Holder of an Allowed Claim pursuant to the Plan that is returned to the Debtor or the Reorganized Debtor as undeliverable and no appropriate forwarding address is received prior to the date on which the Final Decree is entered in the Chapter 11 Case, or (b) in the case of a distribution made in the form of a check, is not negotiated and no request for reissuance is made as provided for in section 5.07 of this Plan.

"Unimpaired" means any Claim that is not Impaired within the meaning of section 1124 of the Bankruptcy Code.

"United States Trustee" means the United States Trustee appointed under section 581(a)(3) of title 28 of the United States Code to serve in the Eastern District of Pennsylvania.

"U.S. Trustee's Fee Claims" means any fees assessed against the Debtor's Estate pursuant to section 1930(a)(6) of title 28 of the United States Code.

"Voting Deadline" means the date and time set by the Bankruptcy Court for the submission of Ballots voting in favor of or against the Plan.

"Voting Record Date" means the voting record date as established in the Order approving the Disclosure Statement.

"Workers Compensation Plan" means the Debtor's workers compensation insurance policies and any agreements, documents or instruments relating thereto entered into prior to the Petition Date.

Section 1.02.   Rules of Interpretation.

All references to "the Plan" herein shall be construed, where applicable, to include references to this document and all its exhibits, appendices, schedules and annexes, if any (and any amendments thereto made in accordance with the Bankruptcy Code).  Whenever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and the neuter.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan as a whole and not to any particular paragraph, subparagraph, or clause contained in the Plan.  The words "includes" and "including" are not limiting and mean that the things specifically identified are set forth for purposes of illustration, clarity or specificity and do not in any respect qualify, characterize or limit the generality of the class within which such things are included.  The captions and headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any term used in the Plan that is not defined in the Plan, either in Article I hereof or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have

-11-

the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules (with the Bankruptcy Code controlling in the case of a conflict or ambiguity). Without limiting the preceding sentence, the rules of construction set forth in section 102 of the Bankruptcy Code shall apply to the Plan, unless superseded herein.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) and Section 12.13 hereof shall apply, but Bankruptcy Rule 9006(a) shall govern.

Section 1.03.   Exhibits.

All Exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein, regardless of when filed.

## ARTICLE II.
## CLASSIFICATION OF CLAIMS AND INTERESTS

Section 2.01.   Generally.

Pursuant to section 1122 of the Bankruptcy Code, set forth below is a designation of Classes of Claims and Interests.  A Claim or an Interest is classified in a particular Class to the extent that the Claim or Interest qualifies within the description of that Class.  A Claim or Interest is placed in a particular Class for the purpose of receiving distributions pursuant to the Plan only to the extent that such Claim or Interest is an Allowed Claim or an Allowed Interest in that Class and such Claim or Interest has not been paid, released, settled or otherwise satisfied prior to the Effective Date:

Class 1 shall consist of all Priority Claims.

Class 2 shall consist of all Member Claims.

Class 3A shall consist of the Claims of the Holders of Series 2015A of the Bonds.

Class 3B shall consist of the Claims of the Holders of Series 2015B of the Bonds.

.

Class 4 shall consist of Other Secured Claims.

Class 5 shall consist of all General Unsecured Claims.

Class 6 shall consist of the Interests in the Debtor.

Section 2.02.   Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not classified and are excluded from the Classes designated in this Article II of the Plan. The treatment accorded Administrative Claims and Priority Tax Claims is set forth in Article III of the Plan.

Section 2.03.   Unimpaired Classes.

-12-

The Plan classifies the following Unimpaired Claims and Unimpaired Interests that are not entitled to vote on the Plan:

Class 1 Priority Claims.

Class 2 Member Claims.

Class 4 Other Secured Claims.

Class 6 Interests in the Debtor.

Pursuant to section 1126(f) of the Bankruptcy Code, each Holder of a Claim or Interest in the above Classes is conclusively presumed to have accepted the Plan in respect of such Claims or Interests and is not entitled to vote to accept or reject the Plan.

Section 2.04.   Impaired Classes Entitled to Vote.

The Plan classifies the following Classes as Impaired Classes that will receive a distribution under the Plan and that are entitled to vote to accept or reject the Plan:

Class 3A and Class 3B Claim of the Bonds.   Although the Indenture Trustee asserts that it holds the Claim of the Bonds, Bondholders hold the right to vote with respect to the Claim of the Bonds whether to accept or to reject this Plan.  (See Sections 3.07 and 4.01.)

Class 5 General Unsecured Claims.

## ARTICLE III.
## PROVISIONS FOR TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

Section 3.01.   Satisfaction of Claims and Interests.

The treatment of and consideration to be received by Holders of Allowed Claims or Allowed Interests pursuant to this Article III and the Plan shall be in full satisfaction, settlement, release, extinguishment and discharge of their respective Claims against or Interests in the Debtor and the Debtor's Estate, except as otherwise provided in the Plan or the Confirmation Order.

Section 3.02.   Unclassified Claims, Classified Unimpaired and Impaired Claims and Classified Interests.

Administrative Claims and Priority Tax Claims are treated by the Debtor in accordance with section 1129(a)(9)(A) and section 1129(a)(9)(C) of the Bankruptcy Code, respectively. Such Claims are Unimpaired under the Plan and, in accordance with section 1123(a)(1) of the Bankruptcy Code, are not designated as Classes of Claims for purposes of this Plan and for purposes of sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code. In addition, Class 1 Claims, Class 2 Claims, Class 4 Claims, and Class 6 Interests are classified as Classes of Claims and Interests that are Unimpaired.  In accordance with section 1126(f) of the Bankruptcy Code, the Holders of Claims in such Classes are conclusively presumed to have

accepted the Plan and are not entitled to vote to accept or reject the Plan.  The Claim of the Bonds in Classes 3A and 3B and Class 5 Claims are Impaired and the holders of such claims are entitled to vote to accept or reject the Plan on account of such respective Allowed Claims.

Section 3.03.   <u>Administrative Claims.</u>

Administrative Claims are Unimpaired.

Unless otherwise provided for herein, each Holder of an Allowed Administrative Claim shall receive, from the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim:  (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Administrative Claim becomes Allowed, or (iii) a date agreed to in writing by the Debtor and the Holder of such Administrative Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor, or as the Bankruptcy Court may order.

Notwithstanding the foregoing, the SBA Claim, which is an Administrative Claim, shall be treated as follows:

The holder of the SBA Claim shall receive payments in accordance with the terms of the SBA Loan Documents.  Interest shall be payable on the balance due on the SBA Secured Claim at the rate of 2.75% per annum.  The Debtor shall make payments of $ 641.00 per month commencing June 13, 2021, until the maturity date under the SBA Loan Documents of June 13, 2050.

Section 3.04.   Priority Tax Claims.

Priority Tax Claims are Unimpaired.

Each Holder of an Allowed Priority Tax Claim shall receive, from and at the option of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Priority Tax Claim: (a) the amount of such unpaid Allowed Priority Tax Claim in Cash on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Priority Tax Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Priority Tax Claim; or (b) such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Priority Tax Claim and the Debtor or as the Bankruptcy Court may order.  Prior to the Effective Date, the Debtor shall have the right to prepay at any time, in whole or in part, any Allowed Priority Tax Claim without premium or penalty of any sort or nature.

Section 3.05.   <u>Class 1:  Priority Claims.</u>

Class 1 Priority Claims are Unimpaired.

Each Holder of an Allowed Class 1 Priority Claim shall receive, in the discretion of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim:  (a) the amount of such unpaid Allowed Claim in Cash on or as soon as reasonably

practicable after the later of (i) the Effective Date, (ii) the date on which such Class 1 Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Class 1 Priority Claim; or (b) such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor.

Section 3.06.    Class 2: Member Claims.

Class 2 Member Claims are Unimpaired.

Each Holder of an Allowed Class 2 Member Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, access and all rights at the Museum to which the Member's respective membership level entitles the Member for the duration of the valid membership, subject to all terms and conditions of such membership.

Section 3.07.    Classes 3A and 3B:  Claim of the Holders of Series 2015A and Series 2015B Bonds.

The Class 3A and 3B Claims are Impaired.  They consist of the Claims held by the Indenture Trustee on account of the Series 2015A and Series 2015B Bonds and under the Indenture.  Recovery on the Claim of the Bonds under this Plan shall be as set forth in this Section 3.07.

Although the Indenture Trustee asserts that it holds the Claim of the Bonds, it is voted by the Bondholders.  Bondholders, *i.e.*, beneficial holders of the Bonds as of the Voting Record Date, have the right to vote, as a Class, to accept or reject this Plan with respect to the Claims of Series 2015A and Series 2015B of the Bonds.  The votes of the Bondholders with respect to Class 3A and 3B shall be tallied as set forth in Section 4.01 below.

A.  Class 3A Treatment

The Holder of the Allowed Class 3A Claim shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claim,

(a)    monthly payments over a term commencing on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 3A Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Class 3A Claim, and ending on the ninth anniversary of the Effective Date.

Such payments shall be in an amount determined as follows:

(i)    for the first twenty four (24) months following the Effective Date, monthly interest-only payments calculated at a fixed rate of interest of 3.25% on the Allowed secured amount of the Claim; and

(ii)    thereafter, equal monthly payments of principal and interest, calculated with respect to the secured amount of the Allowed Class 3A Claim at a fixed rate of 3.25%, and amortized over a 20 year period from the commencement of such equal payments.  A

balloon payment in the amount of the entire balance of the unpaid principal and interest owed shall be made on the ninth anniversary of the Effective Date; or

(b)       notwithstanding the forgoing, in the event that the holder of the Allowed Class 3A Claim makes a timely written election which is filed on the docket in the bankruptcy case for the Class 3A Claim to be treated under 11 U.S.C. §1111(b)(2), then the payments to the holder of the Class 3A Claim shall be made over a term commencing on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 3A Claim becomes Allowed, and (iii) a date agreed to by the Debtor and the Holder of such Class 3A Claim, and ending on the 26th anniversary of the Effective Date, and such payments shall be in the amounts set forth in schedule 3.07(A) attached hereto; or

(c)       such other treatment on such other less favorable terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor.

Until payment in full of the amounts to be paid under the Plan to the Holder of the Class 3A Claim, the Holder of the Allowed Class 3A Claim will retain its liens on the Debtor's real property, personal property and other assets to the same extent and priority as exists on the Confirmation Date.  The Class 3A Claim may be prepaid, in whole or in part, at any time without any prepayment penalty or fee.

The Debtor anticipates that absent reissuance of the Bonds, the Bonds will lose their tax-exempt status.   In the event the Holder of the Class 3A Claim wishes to preserve or reinstate the tax-exempt status of the Bonds, upon written request the Debtor will provide reasonable cooperation with respect to reissuance of the Bonds (before or after the Effective Date), provided that all fees, expenses, or other costs associated with such reissuance are borne by the Holder of the Class 3A Claim.

Following the Effective Date of the Plan, all existing terms of the Indenture and related documents shall be deemed modified by the terms of the Plan; in the event of any conflict between the terms of the Indenture and related documents and the terms of the Plan, the terms of the Plan shall control.  Further, section 2.8 of the Indenture (relating to Tender and Remarketing) shall be deemed deleted from the Indenture.  The Debtor reserves the right to further modify the terms of the Indenture and documents related thereto which shall be in effect following the Effective Date by filing a description of such modifications on the docket in the bankruptcy case at least 10 calendar days prior to the Confirmation Date.

B.   Class 3B Treatment

Holders of the Allowed Class 3B Claims shall receive, in full satisfaction, settlement, release, extinguishment and discharge of such Claims, a single payment in the amount of such Class 3B claimant's pro rata share of the Class 3B Payment Fund, calculated in proportion to the principal amount of such Class 3B Holder's claim, and payable without interest.  Such payments shall be made on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date on which such Class 3B Claim becomes Allowed, and (iii) such later date as may be agreed upon by the Debtor and the Holder of such Class 3B Claim.

Such payments shall be in lieu of the _pari passu_ treatment provided for the in the Indenture and any related documents.

<u>Class 4:  Other Secured Claims.</u>

Class 4 Other Secured Claims are Unimpaired.

Each Holder of an Allowed Class 4 Other Secured Claim shall receive, in the discretion of the Debtor, in full satisfaction, settlement, release, extinguishment and discharge of such Claim:

(d)    Cash equal to the amount of such Allowed Other Secured Claim, plus any interest due through the date of payment, on or as soon as practicable after the later of (i) the Effective Date, (ii) the date that such Other Secured Claim becomes Allowed, and (iii) a later date agreed to by the Debtor and the Holder of such Class 4 Other Secured Claim;

(e)    Reinstatement of such Allowed Other Secured Claim;

(f)    the Property securing such Other Secured Claim; or

(g)    such other treatment on such other terms and conditions as may be agreed upon in writing by the Holder of such Claim and the Debtor.

Artifact Lenders are not classified as Class 4 claims because no dollar amount was owed to such parties as of the Petition Date.  The rights of Artifact Lenders are set forth in Section 10.08 of the Plan.

Section 3.08.    <u>Class 5:  General Unsecured Claims.</u>

Class 5 General Unsecured Claims are Impaired.

Each Holder of an Allowed Class 5 Claim shall receive Cash in an amount equal to such Holder's pro rata share of the Class 5 Payment Fund, with such share to be calculated based on the Allowed amount of the Holder's Class 5 Claim relative to the total amount of Allowed Class 5 Claims.  Such payment of Cash shall be made on or as soon as reasonably practicable after the latest of (i) the Effective Date, (ii) the date such Class 5 Claim becomes Allowed, (iii) 10 business days after the date on which the Allowed amount of all Class 5 Claims have been determined by Final Order; and (iv) such later date as may be agreed upon by the Debtor and the Holder of such Class 5 Claim.

Section 3.09.    <u>Class 6:  Interests.</u>

Class 6 Interests are Unimpaired.

This Class consists of the interests in the Debtor.  Because the Debtor is a non-profit corporation, such interests are deemed held by the public, and not by any individuals or entities.  Such Class 6 Interests shall be preserved and no Property or other distribution of value shall be made on account of such Interests.

121068257_8

## ARTICLE IV.
## ACCEPTANCE OR REJECTION OF THE PLAN; CRAMDOWN

Section 4.01.   <u>Acceptance by Impaired Classes of Claims and Interests.</u>

Pursuant to section 1126(c) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if: (a) the Holders of at least two-thirds (2/3) in dollar amount of the Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan, and (b) more than one-half (1/2) in number of the Holders of such Allowed Claims actually voting in such Class (other than Claims held by any Holder designated pursuant to section 1126(e) of the Bankruptcy Code) have timely and properly voted to accept the Plan.  No Class of Insiders is entitled to vote on the Plan pursuant to section 1126 of the Bankruptcy Code. Holders of Claims that are included in a Class that is entitled to vote but are unliquidated shall be entitled to vote and their claims shall be assigned the value of $1.00 for voting purposes only.

Pursuant to section 1126(c) of the Bankruptcy Code, Class 3A and Class 3B (the Bondholders) and class (General Unsecured Claims) shall be deemed to have accepted this Plan if (a) with regard to the Claims that are actually voted, the beneficial holders of at least two-thirds in aggregate principal amount of such Claims have voted to accept the Plan, and (b) with regard to the Claimants who actually vote, more than one-half in number of such Claimants have voted to accept the Plan.

Section 4.02.   <u>Voting Classes.</u>

Except as otherwise required by the Bankruptcy Code or the Bankruptcy Rules or as otherwise provided in this Section 4.02, only Classes 3A and 3B, the Claim of the Bonds (which Bondholders are entitled to vote), and Class 5 General Unsecured Claims shall be entitled to vote to accept or reject the Plan, in accordance with Section 4.01 of the Plan.  Classes of Claims Unimpaired under the Plan (Priority Claims (Class 1), Member Claims (Class 2), Other Secured Claims (Class 4), and Interests (Class 6)) shall not be entitled to vote to accept or reject the Plan, and shall be conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.   Administrative Claims and Priority Tax Claims are Unimpaired and not classified under the Plan and hence are not entitled to vote to accept or reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

Section 4.03.   <u>Bondholder Ballot Instructions.</u>

Bondholders will be asked to complete and return a Bondholder Ballot to counsel to the Debtor in order that their vote may be tallied as part of Classes 3A and 3B (the Claim of the Bonds).   The voting materials distributed to the Bondholders shall include appropriate instructions regarding the return of Ballots.

Section 4.04.   <u>General Unsecured Claims Ballot Instructions.</u>

Holders of General Unsecured Claims will be asked to complete and return a ballot to the Debtor's counsel as set forth in their package of voting materials.

Section 4.05.  <u>Cramdown.</u>

If all applicable requirements for Confirmation of the Plan are met as set forth in section 1129(a)(1) through (16) of the Bankruptcy Code as applied to non-profit entities, except that the Bankruptcy Court determines that the requirements of subsection (8) thereof have not been met, the Debtor may request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code, notwithstanding the requirements of section 1129(a)(8) thereof, on the bases that the Plan is fair and equitable, and does not discriminate unfairly with respect to each Class of Claims or Interests that is Impaired under, and has not accepted, the Plan.

**ARTICLE V.**
**PROVISIONS GOVERNING DISTRIBUTIONS UNDER THE PLAN**

Section 5.01.  <u>Timing of Distributions.</u>

Except as specifically set forth in the Plan, distributions of Property will be made to Holders of Allowed Claims in accordance with Article III of the Plan.  The distribution with respect to Classes 3A and 3B, the Claim of the Bonds, will be made to the Indenture Trustee.  If a Claim is not an Allowed Claim as of the applicable distribution date, distributions will be made only if and when the Claim is Allowed, and then in accordance with Article III of the Plan and, with respect to the cure of defaults for assumed executory contracts and unexpired leases, Section 6.02 of the Plan, and in each case, subject to Article VIII of the Plan.  Distributions to be made as of the Effective Date on account of Claims that are Allowed as of the Effective Date and are entitled to receive distributions under the Plan shall be made on the Effective Date or as soon as reasonably practicable thereafter, provided, however, that payment to the Indenture Trustee with respect to Classes 3A and 3B shall be made no later than the Effective Date.  Distributions to be made after the Effective Date shall be made on dates to be established by the Reorganized Debtor pursuant to the terms of this Plan, taking into account the resolution of Disputed Claims and the Reorganized Debtor's right to defer distributions if the amount of the Cash to be distributed on a particular date is insufficient to justify the costs of effectuating the distribution.

Section 5.02.  <u>Distributions to Holders of Allowed Claims.</u>

Except as otherwise provided herein, the Debtor or the Reorganized Debtor shall make all distributions required under the Plan in a manner consistent with the Plan.  Distributions to Holders of Allowed Claims will be made in accordance with Article III of the Plan. The distribution with respect to Class 3, the Claim of the Bonds, will be made to the Indenture Trustee.  On, or as soon as reasonably practicable after, the Effective Date, the Reorganized Debtor shall make Cash distributions in accordance with the Plan, provided, however, that the distribution to the Indenture Trustee with respect to Class 3 shall be made no later than the Effective Date.  If any dispute arises as to the identity of a Holder of an Allowed Claim who is to receive any distribution, the Reorganized Debtor shall, as appropriate and in lieu of making such distribution to such Holder, delay such distribution until the disposition thereof shall be determined by Final Order of the Bankruptcy Court or by written agreement among the interested parties to such dispute.

Section 5.03.    Delivery of Distributions.

Distributions to Holders of Allowed Claims shall be made by the Debtor or the Reorganized Debtor: (a) at the last known addresses of such Holders or (b) at the addresses set forth in any written notices of address change which has been filed on the docket and delivered to the Debtor or the Reorganized Debtor.    If any Holder's distribution is returned as undeliverable, no further distributions to such Holder shall be made unless and until the Reorganized Debtor is notified of such Holder's then current address, at which time all missed distributions shall be made to such Holder without interest.

Section 5.04.    Method of Cash Distributions.

Any Cash payment to be made pursuant to the Plan may be made by Cash, draft, check, wire transfer, or as otherwise required or provided in any relevant agreement or applicable law at the option of the Debtor or the Reorganized Debtor.

Section 5.05.    Failure to Negotiate Checks.

Checks issued in respect of distributions under the Plan shall be null and void if not negotiated within ninety (90) days after the date of issuance.    Any amounts returned to the Debtor in respect of such non-negotiated checks shall be held by the Reorganized Debtor. Requests for reissuance for any such check shall be made in writing directly to the issuer of the check by the Holder of the Allowed Claim with respect to which such check originally was issued.    All amounts represented by any voided check will be held until the earlier of: (a) one (1) month after date on which the check is voided, or (b) the date on which the Bankruptcy Court enters the Final Decree, and all requests for reissuance by the Holder of the Allowed Claim in respect of a voided check are required to be made prior to such date.    Thereafter, all such amounts shall be deemed to be Unclaimed Property, in accordance with Section 5.06 of the Plan, and all Holders of Claims in respect of void checks shall be forever barred, estopped and enjoined from asserting a claim to such funds in any manner against the Debtor, its assets, or the Reorganized Debtor.

Section 5.06.    Unclaimed Distributions.

All Property distributed on account of Claims must be claimed prior to the date on which the Bankruptcy Court enters the Final Decree, or, in the case of a distribution made in the form of a check, must be negotiated or a request for reissuance be made as provided for in Section 5.05 of the Plan.    All Unclaimed Property will be retained by and will revert to the Debtor.    All full or partial payments made by the Debtor and received by the Holder of a Claim prior to the Effective Date will be deemed to be payments under the Plan for purposes of satisfying the obligations of the Debtor or the Reorganized Debtor pursuant to the Plan.    Nothing contained in the Plan shall require the Debtor or the Reorganized Debtor to attempt to locate any Holder of an Allowed Claim other than by reviewing the records of the Debtor and any Claims filed in the Chapter 11 Case.    Pursuant to section 1143 of the Bankruptcy Code, all Claims in respect of Unclaimed Property shall be deemed Disallowed and the Holder of any Claim Disallowed in accordance with this Section 5.06 will be forever barred, expunged, estopped and enjoined from asserting such Claim in any manner against the Debtor or the Reorganized Debtor,

or their respective assets.

Section 5.07.    Limitation on Distribution Rights.

If a claimant holds more than one Claim in any one Class, all Claims of the claimant in that Class will be aggregated into one Claim and one distribution will be made with respect to the aggregated Claim.

Section 5.08.    Compliance With Tax Requirements.

In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtor or the Reorganized Debtor, as appropriate, shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.  With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtor or the Reorganized Debtor within thirty (30) days from the date of such request, the Debtor or the Reorganized Debtor, at its option, may withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

Section 5.09.    Claims As To Which Insurance May Apply.

Notwithstanding any other provisions of the Plan, claims as to which the Debtor has, or may have, insurance coverage (including but not limited to any personal injury claims or workers compensation claims) shall be deemed Disputed Claims, and no distributions shall be made with respect thereto, until such time as (a) the extent of the insurance coverage for such claims has been determined, and (b) any payment of insurance proceeds with respect to such claims has been made.  The Debtor's liability with respect to such claims shall be net of any payments of insurance proceeds.

## ARTICLE VI.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES; INDEMNIFICATION OBLIGATIONS; BENEFIT PROGRAMS

Section 6.01.    Rejection of Executory Contracts and Unexpired Leases.

Pursuant to sections 365 and 1123 of the Bankruptcy Code, except as otherwise set forth in this Article VI, each executory contract and unexpired lease to which the Debtor is a party shall be deemed automatically rejected by the Debtor effective as of the Confirmation Date, except for any executory contract or unexpired lease (i) that has been assumed or rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) that is the subject of a motion to assume or reject pending on the Effective Date, (iii) that is listed on Schedule 6.02 of the Plan and therefore is assumed pursuant to the Plan, (iv) which is an agreement with an Artifact Lender or (v) as to which a Treatment Objection has been filed and properly served by the Treatment Objection Deadline.  If an executory contract or unexpired lease either (x) has been assumed or rejected pursuant to an order of the Bankruptcy Court

entered prior to the Effective Date or (y) is the subject of a motion to assume or reject pending on the Confirmation Date, then the listing of any such executory contract or unexpired lease on Schedule 6.02 shall be of no effect.

Section 6.02.   Schedule of Assumed Executory Contracts and Unexpired Leases.

(a)     Those executory contracts and unexpired leases listed on Schedule 6.02 of this Plan shall be assumed as of the Effective Date.  Schedule 6.02 of this Plan represents the Debtor's good faith belief regarding the intended treatment of all executory contracts and unexpired leases to be assumed.  The Debtor reserves the right, on or prior to 3:00 p.m. (prevailing Eastern time) on the third (3rd) Business Day immediately prior to the commencement of the Confirmation Hearing, (i) to amend Schedule 6.02 in order to add, delete or reclassify any executory contract or unexpired lease or amend a proposed assignment and (ii) to amend the Proposed Cure, in each case with respect to any executory contract or unexpired lease previously listed as to be assumed; provided, however, that if the Confirmation Hearing is adjourned for a period of more than two (2) consecutive calendar days, such amendment right shall be extended to 3:00 p.m. on the Business Day immediately prior to the rescheduled or continued Confirmation Hearing, and this proviso shall apply in the case of any and all subsequent adjournments of the Confirmation Hearing. Pursuant to sections 365 and 1123 of the Bankruptcy Code, and except with respect to executory contracts and unexpired leases as to which a Treatment Objection is properly filed and served by the Treatment Objection Deadline, each of the executory contracts and unexpired leases listed on Schedule 6.02 shall be deemed assumed (and, if applicable, assigned) effective as of the Assumption Effective Date specified thereon and the Proposed Cure specified in the notice mailed to each Assumption Party shall be the Cure and shall be deemed to satisfy fully any obligations the Debtor might have with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code.  The Debtor reserves the right to respond to any Treatment Objection.

(b)     The Debtor shall file an initial version of Schedule 6.02 on or before the date of the hearing on the approval of the Disclosure Statement with the Bankruptcy Court and shall serve all notices thereof and any amendments thereto only on the relevant Assumption Parties.  With respect to any executory contract or unexpired lease first listed on Schedule 6.02 later than the date that is ten (10) calendar days prior to the Voting Deadline, the Debtor shall use its best efforts to notify the applicable party promptly of such proposed treatment via facsimile, email or telephone at any notice address or number included in the relevant executory contract or unexpired lease or as otherwise timely provided in writing to the Debtor by any such counterparty or its counsel.

(c)     With respect to any executory contracts or unexpired leases first listed on Schedule 6.02 later than the date that is ten (10) calendar days before the Voting Deadline, affected parties shall have five (5) calendar days from the date of such amendment to Schedule 6.02 to object to Confirmation of this Plan.  With respect to any executory contracts or unexpired leases first listed on Schedule 6.02 later than the Voting Deadline, affected parties shall have until the Confirmation Hearing to object to Confirmation of this Plan or amend any vote on the Confirmation of this Plan.

(d)     The listing of any contract or lease on Schedule 6.02 is not an admission

-22-

that such contract or lease is an executory contract or unexpired lease.

(e)    Notwithstanding anything contained in this Plan, the Debtor may in its sole discretion (but has no obligation to) honor any indemnification obligation to any current or former director, officer or employee, unless such obligation (i) shall have been previously rejected by the Debtor by Final Order of the Bankruptcy Court, or (ii) is the subject of a motion to reject pending on or before the Confirmation Date.

Section 6.03.    Assumption Procedures and Resolution of Treatment Objections.

(a)    Proposed Assumptions.

(i)    With respect to any executory contract or unexpired lease to be assumed pursuant to any provision of this Plan or any Notice of Intent to Assume or Reject, unless an Assumption Party files and properly serves a Treatment Objection by the Treatment Objection Deadline, such executory contract or unexpired lease shall be deemed assumed as of the Assumption Effective Date proposed by the Debtor, without any further notice to or action by the Bankruptcy Court, and any obligation the Debtor may have to such Assumption Party with respect to such executory contract or unexpired lease under section 365(b) of the Bankruptcy Code shall be deemed fully satisfied by the Proposed Cure, if any, which shall be the Cure.

(ii)    Any objection to the assumption of an executory contract or unexpired lease that is not timely filed and properly served shall be denied automatically and with prejudice (without the need for any objection by the Debtor and without any further notice to or action, order or approval by the Bankruptcy Court), and any Claim relating to such assumption shall be forever barred from assertion and shall not be enforceable against any Debtor or its Estate or properties without the need for any objection by the Debtor and without any further notice to or action, order or approval by the Bankruptcy Court, and any obligation the Debtor may have under section 365(b) of the Bankruptcy Code (over and above any Proposed Cure) shall be deemed fully satisfied, released and discharged, notwithstanding any amount or information included in the Schedules or any Proof of Claim.

(iii)    All agreements with Artifact lenders shall be deemed assumed under the Plan, with no cure amount.

(b)    Resolution of Treatment Objections.

(i)    On and after the Effective Date, the Debtor may, in its sole discretion, settle Treatment Objections without any further notice to or action by the Bankruptcy Court or any other party (including by paying any agreed Cure amounts).

(ii)    With respect to each executory contract or unexpired lease as to which a Treatment Objection is timely filed and properly served and that is not otherwise resolved by the parties after a reasonable period of time, the Debtor, in consultation with the Bankruptcy Court, shall schedule a hearing on such Treatment Objection and provide at least 14 calendar days' notice of such hearing to the relevant Assumption Party.  Unless the Bankruptcy Court expressly orders or the parties agree otherwise, any assumption approved by the Bankruptcy Court notwithstanding a Treatment Objection shall be effective as of the Assumption

-23-

Effective Date originally proposed by the Debtor or specified in the Plan.

(iii)    Any Cure shall be paid as soon as reasonably practicable following the entry of a Final Order resolving an assumption dispute and/or approving an assumption, unless the Debtor files a Notice of Intent to Assume or Reject under Section 6.05(d).

(iv)    No Cure shall be allowed for a penalty rate or default rate of interest, each to the extent not proper under the Bankruptcy Code or applicable law.

(c)    Reservation of Rights.  If a Treatment Objection is filed with respect to any executory contract or unexpired lease sought to be assumed by the Debtor, the Debtor reserves the right (i) to respond to such Treatment Objection; (ii) to seek to assume or reject such agreement at any time before the assumption, rejection, assignment or Cure with respect to such agreement is determined by Final Order, and (iii) to the extent a Final Order is entered resolving a dispute as to Cure or the permissibility of assignment (but not approving the assumption of the executory contract or unexpired lease sought to be assumed), to seek to reject such agreement within fourteen (14) calendar days after the date of such Final Order, in each case by filing with the Bankruptcy Court and serving upon the applicable Assumption Party a Notice of Intent to Assume or Reject.

Section 6.04.   Rejection Claims.

With respect to any executory contract or unexpired lease that is rejected by the Debtor pursuant to this Plan or during the administration of this Chapter 11 Case, the Rejection Party shall file a Rejection Claim on or before the Rejection Bar Date.  Any Rejection Claim for which a Rejection Claim is not properly filed and served by the Rejection Bar Date shall be forever barred and shall not be enforceable against the Debtor, or its Estate or properties. The Debtor reserves the right to contest any Rejection Claim, which dispute shall be resolved by the Bankruptcy Court prior to the allowance of the disputed Rejection Claim.

Section 6.05.   Assignment.

To the extent provided under the Bankruptcy Code or other applicable law, any executory contract or unexpired lease transferred and assigned pursuant to this Plan shall remain in full force and effect for the benefit of the transferee or assignee in accordance with its terms, notwithstanding any provision in such executory contract or unexpired lease (including those of the type described in section 365(b)(2) of the Bankruptcy Code) that prohibits, restricts or conditions such transfer or assignment. To the extent provided under the Bankruptcy Code or other applicable law, any provision that prohibits, restricts or conditions the assignment or transfer of any such executory contract or unexpired lease or that terminates or modifies such executory contract or unexpired lease or allows the counterparty to such executory contract or unexpired lease to terminate, modify, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon any such transfer and assignment constitutes an unenforceable anti-assignment provision and is void and of no force or effect.

Section 6.06.   Approval of Assumption, Rejection, Retention or Assignment of Executory Contracts and Unexpired Leases.

-24-

121068257_8

(a)    Entry of the Confirmation Order by the Bankruptcy Court shall, subject to the occurrence of the Effective Date, constitute approval of the rejections, retentions, assumptions and/or assignments contemplated by this Plan pursuant to sections 365 and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease that is assumed (and/or assigned) pursuant to the Plan shall vest in and be fully enforceable by the Debtor in accordance with its terms as of the applicable Assumption Effective Date, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing or providing for its assumption (and/or assignment), or applicable federal law.

(b)    The provisions (if any) of each executory contract or unexpired lease assumed and/or assigned pursuant to the Plan that are or may be in default shall be deemed satisfied in full by the Cure, or by an agreed-upon waiver of the Cure.  Upon payment in full of the Cure, any and all Proofs of Claim based upon an executory contract or unexpired lease that has been assumed in the Chapter 11 Case or under the terms of the Plan shall be deemed disallowed and expunged with no further action required of any party or order of the Bankruptcy Court.

Section 6.07.    <u>Modifications, Amendments, Supplements, Restatements or Other Agreements.</u>

Unless otherwise provided by this Plan or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed, whether or not such executory contract or unexpired lease relates to the use, acquisition or occupancy of real property, shall include (i) all modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument or other document that in any manner affects such executory contract or unexpired lease and (ii) all executory contracts or unexpired leases appurtenant to the premises, if any, including all easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal, powers, uses, reciprocal easement agreements and any other interests in real estate or rights in remedy related to such premises, unless any of the foregoing agreements has been or is rejected pursuant to an order of the Bankruptcy Court or is otherwise rejected as part of the Plan.

Modifications, amendments, supplements and restatements to pre-petition executory contracts and unexpired leases that have been executed by the Debtor during the Chapter 11 Case and actions taken in accordance therewith (i) do not alter in any way the pre-petition nature of the executory contracts and unexpired leases, or the validity, priority or amount of any Claims against the Debtor that may arise under the same, (ii) are not and do not create post-Petition contracts or leases, (iii) do not elevate to administrative expense priority any Claims of the counterparties to the executory contracts and unexpired leases against the Debtor and (iv) do not entitle any entity to a Claim under any section of the Bankruptcy Code on account of the difference between the terms of any pre-petition executory contracts or unexpired leases and subsequent modifications, amendments, supplements or restatements.

**ARTICLE VII.**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

Section 7.01.    <u>Continued Existence.</u>

Except as otherwise provided in the Plan, the Debtor shall, as a Reorganized Debtor, continue to exist after the Effective Date as a legal entity, with all the powers of a non-profit corporation under the laws of the Commonwealth of Pennsylvania and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

Section 7.02.   Plan Funding.

On or as of the Effective Date, the distributions provided for under the Plan shall be effectuated pursuant to the following transactions described in this Article VII:

(a)      the Debtor shall fund distributions through cash on hand from operations and donations;

(b)      the Debtor shall also raise further funds through gifts and charitable donations; and

(c)      Should the Debtor require financing to fund distributions required by this Plan beyond those amounts the Debtor raises in gifts, donations, and operations, the Debtor is hereby authorized to obtain credit and borrow money for the purpose of making such required Plan payments.  Any such extension of credit or borrowing, and any liens or mortgages granted with respect thereto, shall be entitled to the protections provided for in section 364(e) of the Bankruptcy Code.

Section 7.03.   Other Transactions.

In addition, except as otherwise set forth in the Plan, as of the Effective Date, the Debtor may engage in any other transactions deemed necessary or appropriate (including, without limitation, merging, dissolving or transferring assets).  No such other transactions are presently contemplated.

Section 7.04.   Organizational Action.

The entry of the Confirmation Order shall constitute authorization for the Debtor to take or to cause to be taken all actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court.  On or (as applicable) before the Effective Date, the appropriate officers and managers of the Debtor are authorized and directed to execute and deliver the agreements, documents and instruments contemplated by the Plan (or necessary or desirable to effect the transactions contemplated by the Plan) in the name and on behalf of the Debtor.

## ARTICLE VIII.
## PRESERVATION OF CAUSES OF ACTION AND
## RIGHT TO DEFEND AND CONTEST

Section 8.01.   Preservation of Rights.

121068257_8

Except to the extent that any Claim is Allowed during the Chapter 11 Case or expressly by this Plan, the Confirmation Order, or other order of the Bankruptcy Court, nothing, including, but not limited to, the failure of the Debtor or the Reorganized Debtor to object to a Claim or Interest for any reason during the pendency of the Chapter 11 Case, shall affect, prejudice, diminish or impair the rights and legal and equitable defenses of the Debtor or the Reorganized Debtor, with respect to any Claim or Interest, including, but not limited to, all rights of the Debtor or the Reorganized Debtor to contest or defend themselves against such Claims or Interests in any lawful manner or forum when and if such Claim or Interest is sought to be enforced by the Holder thereof.

Section 8.02.   Rights of Action.

Except as otherwise provided in the Plan or the Confirmation Order, all Transferred Avoidance Actions, if any, shall automatically revert to and become the property of the Reorganized Debtor.  The Reorganized Debtor will waive the right to enforce and prosecute such Transferred Avoidance Actions against any Person or Entity, that arose before the Effective Date, other than those expressly preserved or retained as part of or pursuant to the Plan or Confirmation Order.  Nothing herein shall constitute the Debtor's waiver or release of claims, Causes of Action, or defenses not arising under chapter 5 of the Bankruptcy Code.

Section 8.03.   Setoffs.

Except to the extent that any Claim is Allowed, the Debtor or the Reorganized Debtor, as applicable, may, but shall not be required to, set off against any Claims and the payments or distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities, Causes of Action and Claims of every type and nature whatsoever which the Estate, the Debtor or the Reorganized Debtor may have against such Creditors, but neither the failure to do so nor the allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtor or the Reorganized Debtor of any such Claims or Causes of Action the Debtor or the Reorganized Debtor may have against such Creditors.

Section 8.04.   No Payment or Distribution Pending Allowance.

All references to Claims and amounts of Claims refer to the amount of the Claim Allowed by agreement of the Debtor or the Reorganized Debtor and the Holder of such Claim, by operation of law, by Final Order, or by this Plan.  Notwithstanding any other provision in the Plan, no payment or distribution shall be made on account of or with respect to any Claim to the extent it is a Disputed Claim unless and until the Disputed Claim becomes an Allowed Claim.

Section 8.05.   Resolution of Disputed Claims.

The Debtor or the Reorganized Debtor, as applicable, shall have the right, on and after the Effective Date, to file Objections to Claims (except those specifically Allowed by this Plan) and shall serve a copy of each such objection upon the Holder of the Claim to which the Objection is made as soon as practicable, but in no event later than the applicable Claims Objection Deadline.  The foregoing deadlines may be extended by order of the Court.  An Objection to any Claim shall be deemed properly served on the Holder thereof if the Debtor or Reorganized Debtor effects service in any of the following manners:  (a) in accordance with Rule

-27-

4 of the Federal Rules of Civil Procedure, as modified and made applicable by Federal Rule of Bankruptcy Procedure 7004; (b) by first class mail, postage prepaid, on the signatory on the Proof of Claim or other representative identified in the Proof of Claim or any attachment thereto; or (c) by first class mail, postage prepaid, on any counsel that has appeared on the Holder's behalf in the Chapter 11 Case.

## ARTICLE IX.
## CONDITIONS TO CONFIRMATION AND THE EFFECTIVENESS OF THE PLAN

Section 9.01.   Conditions to Confirmation.

The following are conditions precedent to Confirmation of the Plan that must be satisfied or waived in accordance with Section 9.03 of the Plan:

(a)      The Confirmation Order shall be, in form and substance, acceptable to the Debtor.

Section 9.02.   Conditions to Effectiveness.

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in accordance with Section 9.03 of the Plan:

(a)      The Confirmation Order, in form and substance acceptable to the Debtor, shall have been entered and become a Final Order;

(b)      All actions, documents and agreements necessary to implement the Plan shall have been effected or executed as determined by the Debtor in its sole and absolute discretion;

(c)      The Debtor shall have received any authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions or documents that are necessary to implement the Plan and that are required by law, regulation or order, in each case as determined by the Debtor in its sole and absolute discretion;

(d)      The Debtor shall have raised or borrowed adequate funding to effectuate the Cash distributions required under this Plan.

Section 9.03.   Waiver of Conditions to Confirmation or Effectiveness.

The Debtor may waive the condition set forth in Section 9.02(a) hereof at any time, without any notice to other parties-in-interest or the Bankruptcy Court and without any formal action other than proceeding to confirm and/or consummate the Plan.

Section 9.04.   Failure to Satisfy Conditions to Effectiveness.

-28-

The failure to satisfy any condition prior to the Effective Date may be asserted by the Debtor as a reason not to declare an Effective Date, provided that the Debtor determines that such condition cannot reasonably be satisfied.  In such event, the Debtor shall file a motion to modify or withdraw the Plan, and creditors and parties in interest shall have the right to be heard with respect to such motion.  In the event the Bankruptcy Court finds that the Debtor cannot reasonably satisfy the condition set forth in Section 9.02(d) of the Plan, then (a) the Plan shall be deemed withdrawn, (b) the Confirmation Order shall be vacated, and (c) the Plan and the Confirmation Order shall be null and void and of no effect, and nothing contained in the Plan Documents shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other Person or to prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor.

## ARTICLE X.
## EFFECTS OF CONFIRMATION

Section 10.01. Vesting of Assets.

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, and subject to payment of the amount due to the Indenture Trustee with respect to the Claim of the Bonds under this Plan, all property of the Debtor shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges and other interests, except as otherwise specifically provided in the Plan.  All Liens, Claims, encumbrances, charges and other interests shall be deemed fully released and discharged as of the Effective Date, except as otherwise provided in the Plan, and subject to payment of the amount due to the Indenture Trustee with respect to the Claim of the Bonds.  As of the Effective Date, the Reorganized Debtor may operate its organization and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

Section 10.02.    Injunction.

(a)    Discharged Claims and Terminated Interests.    The occurrence of the Effective Date will discharge Claims against the Debtor except as expressly provided herein. Following the occurrence of the Effective Date, no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Reorganized Debtor, the Debtor's successors or their respective property, except as expressly provided herein.  Accordingly, except as otherwise provided herein, that from and after the Effective Date no Holder of a Claim against the Debtor may, on account of such Claim, seek or receive any payment or other distribution from, or seek recourse against, the Reorganized Debtor, the Debtor's successors or their property, and from and after the Effective Date, all Persons who have held, hold, or may hold Claims against or Interests in the Debtor are permanently enjoined from taking any of the following actions against the Debtor, or any of its property on account of such Claims or Interests:  (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order; (iii) creating, perfecting, or enforcing any Lien or encumbrance; and (iv) commencing or continuing, in any manner or in any place, any

-29-

action that does not comply with or is inconsistent with the provisions of the Plan; provided, however, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan. By accepting distributions pursuant to the Plan, each Holder of an Allowed Claim or Allowed Interest shall be deemed to have specifically consented to the injunctions set forth in this Section 10.02.

(b)    Exculpation and Limitation of Liability. Except as otherwise specifically provided in the Plan, to the maximum extent permitted by the Bankruptcy Code and applicable law, neither the Reorganized Debtor, the Debtor, nor any Exculpated Person shall have or incur any liability to any Person, including, without limitation, any Holder of a Claim or Interest or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys or affiliates or any of their successors or assigns, for any act taken or omission made in connection with, relating to, or arising out of, the Chapter 11 Case, filing, negotiating, prosecuting, administering, formulating, implementing, soliciting support or acceptance of, confirming or consummating this Plan or the Property to be distributed under this Plan, including all activities leading to the promulgation and Confirmation of the Plan, the Disclosure Statement (including any information provided or statement made in the Disclosure Statement or omitted therefrom), or any contract, instrument, release or other agreement or document created in connection with or related to the Plan or the administration of the Debtor or this Chapter 11 Case, provided, however, that the foregoing exculpation shall not apply to any act of gross negligence or willful misconduct. Nothing in the Plan or the Confirmation Order shall release any Person, other than the Debtor, from any environmental liability towards a Federal Governmental Unit incurred as a result of said Person's ownership or operation of real property after Confirmation.

Section 10.03.    Other Documents and Actions.

The Debtor is authorized to execute such documents and take such other action as are reasonably necessary or appropriate to effectuate the transactions provided for in the Plan.

Section 10.04.    Term of Injunctions or Stays.

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105(a) or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

Section 10.05.    Preservation of Insurance.

Except as necessary to be consistent with the Plan, the Plan and the discharge provided herein shall not diminish or impair:  (a) the enforceability of insurance policies that may cover Claims against the Debtor or any other Person or Entity; or (b) the continuation of workers' compensation programs in effect, including self-insurance programs.

Section 10.06.    Guaranties.

Notwithstanding the existence of guaranties by the Debtor of obligations of any Entity or Entities, and the Debtor's joint obligations with another Entity or Entities with respect

-30-

to the same obligations, all Claims against the Debtor based upon any such guaranties shall be satisfied, discharged and released in the manner provided in this Plan and the Holders of Claims shall be entitled to only one distribution with respect to any given obligation of the Debtor.

Section 10.07.    No Successor Liability.

Except as otherwise expressly provided in the Plan, the Debtor and the Reorganized Debtor do not, pursuant to the Plan or otherwise, assume, agree to perform, pay, or indemnify or otherwise have any responsibilities for any liabilities or obligations of the Debtor or any other party relating to or arising out of the operations of or assets of the Debtor, whether arising prior to, on, or after the Effective Date.

Section 10.08.    Agreements with Artifact Lenders

All agreements with Artifact Lenders are assumed under Article VI of the Plan, so that the rights of Artifact Lenders under their agreements with the Debtor are preserved.  Upon request for the return of an artifact, the Debtor shall comply with such request in accordance with the terms of the agreement with such Artifact Lender.


**ARTICLE XI.**
**RETENTION OF JURISDICTION**

Section 11.01.    Exclusive Jurisdiction of Bankruptcy Court.

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain after the Effective Date exclusive jurisdiction of all matters arising out of, arising in or related to the Chapter 11 Case to the fullest extent permitted by applicable law, including, without limitation, jurisdiction to:

(a)    classify or establish the priority or secured or unsecured status of any Claim (whether filed before or after the Effective Date and whether or not contingent, Disputed or unliquidated) or resolve any dispute as to the treatment of any Claim pursuant to the Plan;

(b)    grant or deny any applications for allowance of compensation or reimbursement of expenses pursuant to sections 330, 331 or 503(b) of the Bankruptcy Code or otherwise provided for in the Plan, for periods ending on or before the Effective Date;

(c)    determine and resolve any matters related to the assumption, assumption and assignment or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, and to hear, determine and, if necessary, liquidate any Claims arising therefrom;

(d)    ensure that all payments due under the Plan and performance of the provisions of the Plan are accomplished as provided herein and resolve any issues relating to distributions to Holders of Allowed Claims pursuant to the provisions of the Plan;

121068257_8

(e)     construe, take any action and issue such orders, prior to and following the Confirmation Date and consistent with section 1142 of the Bankruptcy Code, as may be necessary for the enforcement, implementation, execution and consummation of the Plan and all contracts, instruments, releases, indentures and other agreements or documents created in connection with the Plan, including, without limitation, the Disclosure Statement and the Confirmation Order, for the maintenance of the integrity of the Plan in accordance with sections 524 and 1141 of the Bankruptcy Code following consummation;

(f)     determine and resolve any cases, controversies, suits or disputes that may arise in connection with the consummation, interpretation, implementation or enforcement of the Plan (and all Exhibits to the Plan) or the Confirmation Order, including the indemnification and injunction provisions set forth in and contemplated by the Plan or the Confirmation Order, or any Entity's rights arising under or obligations incurred in connection therewith;

(g)     hear any application of the Debtor to modify the Plan after the Effective Date  pursuant to section  1127 of  the  Bankruptcy Code and Section 12.04 hereof or modify the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, or remedy any defect or omission or reconcile any inconsistency in any Bankruptcy Court order, the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, in such manner as may be necessary or appropriate to consummate the Plan, to the extent authorized by the Bankruptcy Code and the Plan;

(h)     issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation, implementation or enforcement of the Plan or the Confirmation Order;

(i)     enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(j)     determine any other matters that may arise in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release, indenture or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order, except as otherwise provided in the Plan;

(k)     determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(l)     hear and determine any other matters related hereto and not inconsistent with chapter 11 of the Bankruptcy Code;

(m)     hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(n)     enter a Final Decree closing the Chapter 11 Case;

121068257_8

(o)      allow, disallow, determine, liquidate or estimate any Claim, including the compromise, settlement and resolution of any request for payment of any Claim, the resolution of any Objections to the allowance of Claims and to hear and determine any other issue presented hereby or arising hereunder, including during the pendency of any appeal relating to any Objection to such Claim (to the extent permitted under applicable law);

(p)      permit the Debtor or the Reorganized Debtor, to the extent provided for in the Plan, to recover all assets of the Debtor and Property of its Estate, wherever located;

(q)      hear and determine any motions or contested matters involving taxes, tax refunds, tax attributes and tax benefits and similar or related matters with respect to the Debtor or the Debtor's Estate arising prior to the Effective Date or relating to the period of administration of the Chapter 11 Case, including, without limitation, matters concerning federal, state and local taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and

(r)      hear and determine any motions, applications, adversary proceedings, contested matters and other litigated matters pending on, filed or commenced after the Effective Date that may be commenced by the Debtor or the Reorganized Debtor thereafter, including Transferred Avoidance Actions, proceedings with respect to the rights of the Debtor or the Reorganized Debtor to recover Property under sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code, or proceedings to otherwise collect to recover on account of any Claim or Cause of Action that the Debtor may have had.

Section 11.02.    Failure of Bankruptcy Court to Exercise Jurisdiction.

If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction over any matter arising under, arising in or related to the Debtor, including with respect to the matters set forth above in Section 11.01 hereof, this Article XI shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## ARTICLE XII.
## MISCELLANEOUS PROVISIONS

Section 12.01.    Binding Effect of Plan.

The provisions of the Plan shall be binding upon and inure to the benefit of the Debtor, the Estate, the Reorganized Debtor, any Holder of any Claim or Interest treated herein or any Person named or referred to in the Plan, and each of their respective heirs, executors, administrators, representatives, predecessors, successors, assigns, agents, officers and directors, and, to the fullest extent permitted under the Bankruptcy Code and other applicable law, each other Person affected by the Plan.

Section 12.02.    Final Order.

Except as otherwise expressly provided in the Plan, any requirement in the Plan for a Final Order may be waived by the Debtor.  No such waiver shall prejudice the right of any party in interest to seek a stay pending appeal of any order that is not a Final Order.

121068257_8

Section 12.03.   <u>Modification of the Plan.</u>

The Debtor may modify the Plan at any time prior to the Confirmation Date provided that the Debtor satisfies the requirements of section 1127(a) of the Bankruptcy Code. After the Confirmation Date and prior to the substantial consummation of the Plan, the Debtor may modify the Plan, provided that the Debtor satisfies the requirements of section 1127(b) of the Bankruptcy Code and the Bankruptcy Rules.   Further, the Debtor may, so long as the treatment of Holders of Claims or Interests under the Plan is not adversely affected, institute proceedings in the Bankruptcy Court to remedy any defect or omission or to reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order and any other matters as may be necessary to carry out the purposes and effects of the Plan; provided, however, prior notice of such proceedings shall be served in accordance with Bankruptcy Rules 2002 and 9014.

Section 12.04.   <u>Business Days.</u>

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

Section 12.05.   <u>Severability.</u>

Should the Bankruptcy Court determine, prior to the Confirmation Date, that any provision of the Plan is either illegal on its face or illegal as applied to any Claim or Interest, such provision shall be unenforceable as to all Holders of Claims or Interests or to the specific Holder of such Claim or Interest, as the case may be, as to which such provision is illegal. Unless otherwise determined by the Bankruptcy Court, such a determination of unenforceability shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

Section 12.06.   <u>Governing Law.</u>

Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other federal laws are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the construction, implementation and enforcement of the Plan and all rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to conflicts-of-law principles which would apply the law of a jurisdiction other than the Commonwealth of Pennsylvania.

Section 12.07.   <u>Payment of Statutory Fees.</u>

All United States Trustee's Fee Claims, as determined, if necessary, by the Bankruptcy Court at the hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date by the Debtor.

Section 12.08.   <u>Post-Confirmation Operating Reports.</u>

121068257_8

To the extent required, the Debtor shall file quarterly operating reports as required by the United States Trustee until such time as a Final Decree or other order is entered under section 350(a) of the Bankruptcy Code closing the Debtor's bankruptcy case.

Section 12.09.    Notices.

Any notice required or permitted to be provided under this Plan to the Debtor, or any request for information with respect to the Plan, shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight delivery service, freight prepaid, to be addressed as follows:

>National Museum of American Jewish History
>101 S Independence Mall East
>Philadelphia, PA 19106
>Attn:  Paul Waimberg

With copies to:

>Dilworth Paxson LLP
>1500 Market Street
>Suite 3500E
>Philadelphia, PA 19102
>Attn.:  Lawrence G. McMichael
>Email:  lmcmichael@dilworthlaw.com

Section 12.10.    Filing of Additional Documents.

The Plan Documents and any other documents, agreements, instruments, schedules or exhibits specified in the Plan shall, where expressly so provided for in this Plan, be contained in Plan supplements filed from time to time, all of which shall be filed with the Bankruptcy Court no later than seven (7) calendar days prior to the Voting Deadline.  Unless otherwise expressly provided in the Plan, the Debtor shall remain free to modify or amend any such documents after such date.  Upon filing with the Bankruptcy Court, the Plan supplements may be inspected in the office of the clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may also obtain a copy of the Plan supplements on the Bankruptcy Court's Website (located at www.paeb.uscourts.gov).

Section 12.11.    Section 1125 of the Bankruptcy Code.

(a) The Debtor has, and upon Confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and (b) the Debtor (and its respective Affiliates, officers, directors, employees, consultants, agents, advisors, members, attorneys, accountants, financial advisors, other representatives and Professionals), has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, and purchase of any securities offered and sold under the Plan, and are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the

-35-

Plan or the offer, issuance, sale, or purchase of any securities offered and sold under the Plan.

Section 12.12.    Section 1146 Exemption.

To the fullest extent permitted under section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, if any, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtor or the Reorganized Debtor, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

Section 12.13.    Time.

Unless otherwise specified herein, in computing any period of time prescribed or allowed by the Plan, the Day of the act or event from which the designated period begins to run shall not be included.  The last Day of the period so computed shall be included, unless it is not a Business Day, in which event the period runs until the end of next succeeding Day that is a Business Day.  Otherwise, the provisions of Bankruptcy Rule 9006 shall apply.

Section 12.14.    No Attorneys' Fees.

No attorneys' fees will be paid by the Debtor with respect to any Claim or Interest except as expressly specified herein or by order of the Bankruptcy Court.

Section 12.15.    Continued Confidentiality Obligations.

Pursuant to the terms thereof, members of and advisors to any Committee, any other Holder of a Claim or Interest, and their respective predecessors, successors and assigns shall continue to be obligated and bound by the terms of any confidentiality agreement executed by them in connection with the Chapter 11 Case or the Debtor, to the extent that such agreement, by its terms, may continue in effect after the Confirmation Date; provided, however, that no confidentiality agreement between the Debtor and the Indenture Trustee, and/or Bondholders (past or current), and/or any committee or other representative of the Bondholders, shall be binding after the Effective Date.

Section 12.16.    No Waivers.

Notwithstanding anything herein to the contrary, nothing contained in the Plan shall be deemed a waiver by the Debtor with respect to any matter set forth herein, including, without limitation, liability on any Claim or Interest or the propriety of any classification of any Claim or Interest.

Section 12.17.    Entire Agreement.

The Plan (and all Exhibits to the Plan and any Plan supplements that may be filed)

121068257_8

sets forth the entire agreement and undertakings relating to the subject matter hereof and supersedes all prior discussions and documents.  The Debtor shall not be bound by any terms, conditions, definitions, warranties, understandings, or representations with respect to the subject matter hereof, other than as expressly provided for herein or as may hereafter be agreed to by the parties in writing.

Section 12.18.   Waiver.

The Debtor reserves the right to waive any provision of this Plan to the extent such provision is for the sole benefit of the Debtor and/or its officers or directors.

Section 12.19.   Bar Date for Professionals.

Applications for compensation for services rendered and reimbursement of expenses incurred by Professionals from the Petition Date through the Effective Date shall be filed and served no later than forty-five (45) days after the Effective Date.  Applications that are not timely filed will not be considered by the Court. The Debtor or the Reorganized Debtor may pay any Professional fees and expenses incurred after the Effective Date (including those of Professionals incurred in connection with prosecuting any Professional Fee Claim) without any application to the Bankruptcy Court.

The Debtor hereby requests Confirmation of the Plan pursuant to section 1129(a) or section 1129(b) of the Bankruptcy Code.

| | |
|---|---|
| Dated:  September 24, 2020 | /s/  Peter C. Hughes |
| Philadelphia, Pennsylvania | **DILWORTH PAXSON LLP** |
| | Lawrence G. McMichael |
| | Peter C. Hughes |
| | Yonit A. Caplow |
| | 1500 Market St., Suite 3500E |
| | Philadelphia, PA 19102 |
| | Telephone:  (215) 575-7000 |
| | Facsimile:  (215) 575-7200 |
| | |
| | *Counsel for the Debtor and Debtor-in-Possession* |

121068257_8